NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0345n.06
Filed: June 18, 2008

No. 06-4625

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EDDIE DAVIS, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: KEITH and SUTTON, Circuit Judges; and ACKERMAN, District Judge.[*]

SUTTON, Circuit Judge. After a jury found Eddie Davis guilty of possessing (with intent to distribute) at least 50 grams of crack cocaine, the district court imposed a 240-month sentence—the statutory minimum sentence for offenders who have a prior felony-drug conviction and whose offense involves at least 50 grams of "cocaine base." *See* 21 U.S.C. § 841(b)(1)(A). On appeal, Davis argues that the evidence does not show that he possessed crack cocaine. We affirm.

I.

In 2005, Cleveland police officers received a tip from an informant that Eddie Davis "was selling crack cocaine" in the area. JA 45. The informant, Vincent Whatley, agreed to participate in

---

[*]The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

a controlled buy for crack cocaine. As Davis and Whatley were completing the transaction, officers arrested Davis and found cocaine on the ground near him, in his pockets and in his vehicle.

A federal jury found Davis guilty of one count of possession with intent to distribute 50 grams or more of "cocaine base (crack cocaine)." JA 30–31; *see* 21 U.S.C. § 841(a)(1), (b)(1)(A). At sentencing, the judge initially noted that the applicable guidelines range was 188–235 months. But because the offense involved 50 grams or more of "cocaine base" and because Davis had a prior felony-drug conviction, the district court raised his sentence to the statutory mandatory minimum of 240 months. *See* 21 U.S.C. § 841(b)(1)(A); *see also* U.S.S.G. § 5G1.1(b).

II.

In challenging this sentence, Davis argues that the district court erred in applying the statutory enhancement for controlled-substance violations involving at least 50 grams of "cocaine base." *See* 21 U.S.C. § 841(b)(1)(A). While he acknowledges that his drugs tested positive for cocaine base, he contends that the statutory enhancement refers to just one form of cocaine base—crack cocaine—and that the evidence does not show that this is the type of cocaine he possessed.

In general, "[a]ll crack is cocaine base but not all cocaine base is crack." *United States v. Edwards*, 397 F.3d 570, 571 (7th Cir. 2005). That is because there are two forms of cocaine base: "crack" cocaine, which is produced using baking soda, and "freebase" cocaine, which is produced using a flammable solvent. United States Sentencing Commission, *Cocaine and Federal Sentencing Policy* 13–14 (Feb. 1995), *available at* http://www.ussc.gov/crack/chap1-4.pdf. The federal

sentencing guidelines, however, define "cocaine base" to mean *only* crack. *See* U.S.S.G. § 2D1.1 n.D; *see also United States v. Jones*, 159 F.3d 969, 982 (6th Cir. 1998). And Davis argues that, although the statutory enhancement does not define "cocaine base," we should interpret it, too, as referring just to crack cocaine. *See, e.g.*, *Edwards*, 397 F.3d at 571–72 (equating "cocaine base" in 21 U.S.C. § 841(b)(1)(A)(iii) with crack cocaine). While we have used language that arguably equates the two terms, *see id.* at 576 (citing *United States v. Levy*, 904 F.2d 1026, 1033 (6th Cir.1990)), we have not squarely decided this issue.

Nor is it necessary for us to decide the issue today. Davis did not raise this distinction below and accordingly plain-error review applies. *See United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006); *see also United States v. Morris*, 498 F.3d 634, 643–44 (7th Cir. 2007). That requires Davis to show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal citation and quotation marks omitted).

Davis has not shown plain error. Even if the statute refers only to crack cocaine, as he argues, the jury made a factual finding (upon which the district court relied at sentencing) that Davis possessed crack cocaine. Laboratory tests showed that the substances in the bags "were all cocaine" and that they tested "positive for cocaine base." JA 102, 105. And while the tests did not specify that the "cocaine base" was crack, the trial testimony provided more than enough evidence to support that conclusion.

*First*, Whatley and Detective Dlugolinski testified that the purpose of the controlled buy was to purchase crack cocaine. *See United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) ("The identity of a drug may be ascertained by circumstantial evidence . . . ."). Whatley told officers that Davis was selling crack cocaine, and when Whatley told Davis that he wanted "what [he] got last time," JA 49, the officers understood that to mean crack cocaine. Whatley also told Davis, "My clucks love it." JA 58. "Clucks," Dlugolinski testified as a drug-trafficking expert, is "a derogatory word [for] a crackhead or a person addicted to crack cocaine." JA 58; *see also United States v. Fifer*, 206 F. App'x 502, 507–08 (6th Cir. Nov. 20, 2006) (noting that police officers may testify as experts about drug activity).

*Second*, narcotics officers described the drugs that they found as "crack cocaine." *See United States v. Owusu*, 199 F.3d 329, 340 (6th Cir. 2000) ("The government may rely on . . . testimony from field agents to establish that seized cocaine is crack cocaine."), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59, 63–66 (2001); *see also Morris*, 498 F.3d at 644 (relying on officer testimony to hold that there was sufficient evidence that the drug in question was crack cocaine, as opposed to another form of cocaine). Three narcotics officers each testified that Davis had crack cocaine with him when they approached him. *See* JA 60 (Dlugolinski testifying that "there was an amount of crack cocaine under [Davis's] person"); JA 93 (Detective Baeppler testifying that officers "found a baggy that was under [Davis] which contained what [Baeppler] believed to be crack cocaine"); JA 97 (Detective Perpar testifying that, when he picked Davis up from the ground, "there

was a bag of crack cocaine"). And when the government introduced bags of drugs as exhibits, Dlugolinski identified each exhibit as a bag of crack cocaine.

*Third*, the government introduced into evidence other materials involved in the production and distribution of crack cocaine. *See Wright*, 16 F.3d at 1439; *see also United States v. Bullard*, 46 F. App'x 830, 831 (6th Cir. Sept. 19, 2002) (per curiam). Again testifying in his capacity as a drug-trafficking expert, Dlugolinski explained that a glass beaker and a butter knife found in the rear of the vehicle were "used to take powder cocaine and turn it into crack cocaine." JA 67. "The knife," Dlugolinski testified, "is used to cut [the cocaine] out of the dish or stir it to where it becomes crack cocaine." *Id.* The government also introduced "tear-offs," namely halves of sandwich baggies, that officers found in Davis's pocket. JA 67–68. Dlugolinski explained that, when crack cocaine is cut into cubes, the "rock[s] [are] taken in a piece of Ziplock baggy, placed in a corner, twisted up extremely tight, and then ripped off" to seal the drugs in plastic, enabling one to "carry it in [his] mouth [or] swallow it" without ingesting the drug. JA 68. The "tear-offs," Dlugolinski said, "are the disregarded hal[ves] that did not contain the drugs." *Id.*

Davis, notably, does not point to any evidence contradicting the finding that the substance was crack cocaine. *See Morris*, 498 F.3d at 644; *cf. Edwards*, 397 F.3d at 573 (reversing and remanding for resentencing because the statute applies only to crack and because the defendant's expert testified that the drugs were a noncrack form of cocaine base). Given the evidence that the substances tested positive for cocaine base, that the purpose of the controlled buy was to purchase crack cocaine, that the officers all described the confiscated drugs as crack cocaine and that Davis

possessed materials used to produce and distribute crack cocaine, the district court did not commit

plain error in finding that Davis's offense involved crack cocaine.

III.

For these reasons, we affirm.