NOT FOR FULL-TEXT PUBLICATION
File Name: 10a0287n.06

No. 08-2555

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH  CIRCUIT**

UNITED STATES OF AMERICA,

   **Plaintiff-Appellee,**

v.

ERIC DEWAYNE KIMBROUGH,

   **Defendant-Appellant.**

_____/

      ON APPEAL FROM THE
      UNITED STATES DISTRICT
      COURT FOR THE EASTERN
      DISTRICT OF MICHIGAN

**BEFORE:  MARTIN, SUHRHEINRICH and WHITE, Circuit Judges.**

   **SUHRHEINRICH, Circuit Judge.**  Defendant Eric DeWayne Kimbrough ("Kimbrough")

appeals the sentence imposed by the district court following a jury verdict on the lesser offense of

possession of cocaine base.  We AFFIRM.

## I.  Background

   On April 6, 2005, police officers assigned to the Flint Area Narcotics Group (FANG) received

a tip that an individual was selling "crack" cocaine from a home at 619 Barrie Street in Flint, Michigan,

and set up surveillance.  When Kimbrough left the house in his car, he was stopped by a Michigan State

Police trooper, Josh Dirkse, for a traffic violation, and arrested for driving without a license.

   FANG officers arrived at the scene of the traffic stop and read Kimbrough his *Miranda* rights.

FANG officer Ryan Pennell testified that Kimbrough informed them that he had "crack" in his pants.

Kimbrough removed a napkin from his pants containing what the officer described as "crack."  The

-1-

substance was later determined by the Michigan State Police crime laboratory to be 5.89 grams of cocaine base.

Kimbrough gave consent to search his residence. Michigan State Police Lieutenant Matt Rice found 35.33 grams of cocaine base in an oven mitt hanging on the kitchen wall. Rice identified the substance he seized as "a baggie of crack cocaine." One of the officers asked Kimbrough if there was anything else in the house. Kimbrough told him that there was a shotgun in the rafters of the basement, and acknowledged that it belonged to him.

Kimbrough was charged with possession with intent to distribute five or more grams of cocaine base. A jury convicted him of the lesser included charge of simple possession of more than five grams of cocaine base.

Kimbrough's base offense level was calculated at 28, because the offense involved at least 35 grams but less than 50 grams of cocaine base. *See* U.S.S.G. § 2D1.1(c)(6). Two levels were added for possession of a firearm during the offense. *See* U.S.S.G. § 2D1.1(b)(1). The revised presentence report advised that a reduction under U.S.S.G. § 3E1.1 was not applicable because Kimbrough had not clearly accepted responsibility for his involvement in the charged offense and had put the government to its burden of proof at trial. *See* U.S.S.G. § 3E1.1. This resulted in a total offense level of 30. Kimbrough was assigned a criminal history category of V. The resulting guideline range was 151 to 188 months.

Kimbrough objected to the application of the crack cocaine guidelines, the application of the firearm enhancement, and the denial of the acceptance of responsibility adjustment. The district court entered an order overruling Kimbrough's objections. The district court imposed a sentence of 151 months, to be served consecutively to Kimbrough's uncharged term of imprisonment for a probation violation.

Kimbrough presents four issues on appeal. First, he argues that the appropriate base offense level was 14 because there was insufficient proof that the substance he possessed was crack cocaine. Second, he contends that the district court erred by enhancing his offense level for possession of a firearm. Third, he asserts that he was entitled to a reduction for acceptance of responsibility. Fourth, Kimbrough complains that the district court abused its discretion in sentencing him to 151 months' imprisonment.

## II. Analysis

This court reviews a district court's sentencing determination for reasonableness, using an abuse-of-discretion standard. *United States v. Alexander*, 543 F.3d 819, 821 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2175 (2009). This reasonableness inquiry involves both procedural and substantive components. *Id.* at 821-22 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). In assessing procedural reasonableness, we look to see if the district court properly calculated the guidelines range, treated the guidelines as advisory, considered the § 3553(a) factors, and adequately explained the sentence, including an explanation for any variance from the guidelines range. *United States v. Presley*, 547 F.3d 625, 629-30 (6th Cir. 2008); *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). *See also United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) ("Post-*Booker*, we consider sentences predicated on a guidelines miscalculation to be 'procedurally unreasonable.'"). We review the district court's legal interpretation of the Guidelines de novo, and its factual findings at sentencing for clear error. *Catalan*, 499 F.3d at 606.

## A. Base Offense Level

Kimbrough argues that his base offense level should have been 14, not 28, because the laboratory report admitted into evidence states merely that "Chemical analysis of the white material showed the presence of cocaine base," and not crack cocaine. Kimbrough also claims the district court

did not make a factual determination that the substance at issue was crack or another form of cocaine base.

The appropriate guideline offense level for a conviction involving the possession of more than five grams of cocaine base is governed by the drug quantity table found at U.S.S.G. § 2D1.1(c). *See* U.S. Sentencing Guidelines Manual § 2D2.1(b)(1) (2007). The base offense level for powder cocaine is 14. U.S.S.G. § 2D1.1(c)(13). The base offense level for cocaine base is 28. U.S.S.G. § 2D1.1(c)(6). Note D to the Drug Quantity Table states that "Cocaine base," for the purposes of this guideline, means "crack." "'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(Notes to Drug Quantity Table) (D). *See also United States v. Stafford*, 258 F.3d 465, 471 (6th Cir. 2001) (noting that "the Sentencing Guidelines equate 'cocaine base' with the street term 'crack;'"; citing note D); *United States v. Davis*, 281 F. App'x 519, 520 (6th Cir.), *cert. denied*, 129 S. Ct. 473 (2008). Both this Court and the Guidelines themselves recognize that there is no specific scientific definition for crack. *See United States v. Jones*, 159 F.3d 969, 981-83 (6th Cir.1998); *see also United States v. Grayson*, 286 F. App'x 943, 945 (7th Cir. 2008) (stating that "[n]o forensic test can determine whether a substance is 'crack,' because crack is the street name for a type of cocaine base, not a chemical term"). The question whether a particular substance is crack is a question of fact, and we accordingly review the district court's characterization of a controlled substance as crack under § 2D1.1 for clear error. *See Jones*, 159 F.3d at 982.

The district court held that a preponderance of the evidence indicated that the substance was crack and not some non-crack substance like coca paste. This finding was not clearly erroneous. First, as the district court held, police witnesses repeatedly identified the substances Kimbrough possessed as "crack." Pennell, who had been involved in numerous crack cocaine investigations, identified the

substance as crack. Pennell further testified that Kimbrough told him he "had some crack in his pants that the trooper missed during the patdown." Racosta testified that Kimbrough acknowledged that it was his "crack cocaine." Rice, also experienced in drug investigations, identified the substance he seized from Kimbrough's residence as "a baggie of crack cocaine." In short, the trial testimony supports the conclusion that the substance at issue was crack cocaine. *See United States v. Owusu*, 199 F.3d 329, 340 (6th Cir. 2000) (holding "[t]he government may rely on . . . testimony from field agents to establish that seized cocaine is crack cocaine"), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001); *United States v. Davis*, 281 F. App'x 519, 521 (6th Cir. 2008) (holding that district court did not err in concluding substance was "crack" for sentencing purposes based on narcotics officers' descriptions of the drugs), *cert. denied*, 129 S. Ct. 473 (2008).

Second, in both his opening statement and closing argument, defense counsel repeatedly characterized the substance at issue as "crack cocaine." *Cf. Stafford*, 258 F.3d at 471-72 (rejecting the defendant's argument that the government had not shown by a preponderance of the evidence that the substance in the laboratory report identified as "cocaine freebase" was really "crack cocaine" because defense counsel did not object in the district court to repeated characterizations of the substance at issue as "crack").

Third, the jury convicted Kimbrough of an offense involving crack cocaine. Although the jury verdict form refers to "cocaine base" and not "crack cocaine," it referenced count one of the indictment, which specifically charged Kimbrough with "knowingly and intentionally possess[ing] with intent to distribute five grams or more of a mixture or substance containing cocaine base, commonly referred to as 'crack' cocaine." In addition, the jury instructions provided that, in order to prove that Kimbrough violated 21 U.S.C. § 841, the Government would have to prove that Kimbrough "intended to distribute crack cocaine." Finally, the indictment was read to the jury. *Cf. United States v. Higgins*, 557 F.3d

381, 396 (6th Cir.) *cert. denied*, 130 S. Ct. 817 (2009) (holding that the defendant was properly subject to the enhanced cocaine base penalties contained in 21 U.S.C. § 841, because the jury verdict form, which did not specifically refer to "crack cocaine," referenced the indictment, which incorporated the definition of "cocaine base" as "crack cocaine").

In sum, the district court's application of the crack cocaine guidelines to set Kimbrough's base offense level at 28 was not clearly erroneous.

## B. Possession of a Firearm Enhancement

Kimbrough also argues that he should not have received a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1 because it is "clearly improbable" that the weapon was connected to the offense.

Section 2D1.1(b)(1) states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G § 2D1.1(b)(1). Application Note 3 states that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. The Government bears the initial burden of proving by a preponderance of the evidence that "(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (internal quotation marks and citation omitted). The burden then shifts to the defendant to show that it was "clearly improbable" that the firearm was connected to the offense. *Id.* If the defendant fails to meet his burden, "the district court should apply the enhancement." *Id.* at 606-07.

"A defendant constructively possesses a gun if he has ownership, or dominion or control over the firearm itself, or dominion over the premises where the firearm is located." *United States v. Galvan*, 453 F.3d 738, 742 (6th Cir. 2006) (internal quotation marks, alterations, and citation omitted). The

enhancement applies if the firearm is possessed during "relevant conduct," and not merely if a weapon is possessed during the commission of the offense. *United States v. Faison*, 339 F.3d 518, 520-21 (6th Cir. 2003) (noting that 1991 amendments to Sentencing Guidelines expanded scope of weapons enhancement); *United States v. Armour*, 38 F.3d 1217 (6th Cir. Oct. 12, 1994) (per curiam) (table decision) (noting that effective November 1, 1991, guideline was amended to require only that firearm be "possessed," not that it be "possessed during the commission of the offense"; citing U.S.S.G. App. C, p. 224 (1992)).

Kimbrough argues that the enhancement was improper because he was not in possession of the weapon when he was arrested and found to be in possession of cocaine. He further claims that he was in custody the entire time the officers searched his house and therefore clearly had no control over the weapon during the commission of the offense.

In determining whether a firearm was related to a particular drug offense for purposes of U.S.S.G. § 2D1.1(b)(1) we consider the proximity of the weapon to the drugs, the type of firearm involved, whether it was loaded, and any alternative purpose for the gun's presence. *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002) (citing *United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996)). In this case, each of these factors weighs in favor of the enhancement. First, Kimbrough's loaded shotgun is "of a type associated with drug trafficking." *United States v. Calhoun*, 49 F.3d 231, 237 (6th Cir. 1995). *Cf. United States v. Garner*, 940 F.2d 172, 175 (6th Cir. 1991) (holding that the defendant showed that it was clearly improbable that a single shot antique Derringer, described as a collector's piece, kept unloaded in a locked safe was connected to his drug trafficking offense). Second, its location in the basement rafters was "a place indicating purposeful concealment rather than a place indicating possession for a legal purpose." *United States v. Chalkias*, 971 F.2d 1206, 1217 (6th Cir. 1992) (finding enhancement warranted even though the gun was unloaded and traces of drugs were

on different floors of the apartment, because the gun, a Mac-10 semi-automatic weapon, was "clearly a gun of the type that is normally associated with drug activity"); *United States v. Fuller*, 72 F. App'x 399, 400-01 (6th Cir. 2003) (order) (upholding enhancement for unloaded weapon that was stored in a cardboard box in close proximity to the crack cocaine; citing *Chalkias*); *United States v. Howard*, 36 F. App'x 758, 762 (6th Cir. 2002) (per curiam) (holding that enhancement was proper for an unloaded weapon because a 9-mm pistol foun in a room with $720 cash attributed to drug sales; citing *Chalkias*). Third, the shotgun was loaded. *See Moses*, 289 F.3d at 850. Finally, Kimbrough never offered an alternative explanation for the firearm, and thus failed to meet his burden of establishing that any connection between the weapon and narcotics was clearly improbable.

Kimbrough's reliance on *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001), is misplaced. In *Mackey,* the question of possession "in furtherance" of the crime was an element of the offense under 21 U.S.C. § 924(c). Here, the issue involves a sentencing factor, rather than an element of the crime. *See United States v. Hurley*, 278 F. App'x 574, 576 (6th Cir. 2008) (rejecting the defendant's reliance on *Mackey* in his challenge to an enhancement under § 2D1.1(b)(1)).

In sum, because Kimbrough constructively possessed the weapon during the commission of the drug offense, the district court did not err in applying the firearm enhancement.

## C. Acceptance of Responsibility

Kimbrough argues that he should have received an acceptance-of-responsibility reduction because he admitted the elements of the offense of which he was convicted and only disputed his guilt of the greater offense, of which he was acquitted. A reduction for acceptance of responsibility is generally "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt or expresses remorse." U.S.S.G. § 3E1.1, cmt. n. 2. "Conviction by trial, however, does not automatically preclude

-8-

a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id. See generally United States v. Clemons*, 999 F.2d 154, 161 (6th Cir. 1993) (holding that "conditioning the acceptance of responsibility reduction on a defendant's waiver of his Fifth Amendment privilege against self-incrimination does not penalize the defendant for assertion of his right against self-incrimination in violation of the Fifth Amendment).

The district court ruled that Kimbrough was not entitled to the reduction because "Defendant has never made a truthful admission of guilt on his own, Defendant did not testify at trial about his guilt, and Defendant fought his conviction on both the charged offense (possession with intent to distribute) and the lesser offense (simple possession) at every stage of the legal proceedings." Kimbrough contested at sentencing whether the drugs qualified as "crack" for purposes of calculating the applicable Guidelines range. As we have already found, *supra* Part II.A, this argument was plainly without merit in light of the voluminous evidence in support of characterizing the substance as "crack." Kimbrough's steadfast, and erroneous, insistence that he should not be subject to the crack Guidelines provisions constitutes a refusal to accept responsibility that supports the district court's decision.

### D. Reasonableness and Disparity

Kimbrough further contends that the district court abused its discretion in sentencing him to 151 months' imprisonment, which is more than two and one half times the mandatory minimum set forth in 21 U.S.C. § 844(a), especially since the Guidelines are now deemed advisory. He also asserts that the district court did not articulate its reason for choosing the 151-month sentence. We address the latter contention first.

As noted, a sentence is procedurally unreasonable if the district court fails to consider the applicable Guidelines range or neglects to consider the factors listed in 18 U.S.C. § 3553(a). *See Bolds*,

511 F.3d at 579-81. Here, the district court offered both specific reasons for rejecting Kimbrough's guidelines objections in a written order, and considered the § 3553(a) factors on the record. At that sentencing hearing, the district court reviewed Kimbrough's personal history, both his parents' separation when he was young and the death of a friend when he was fourteen years of age, as well as the fact that Kimbrough owed $56,658 in child support. The court noted his "involvement with drugs and the selling of drugs for all of [his] adult life." The district court also reviewed Kimbrough's extensive criminal history and his record of probation violations. The district court stated that it considered the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, to promote deterrence, and to protect the public. Lastly, the court requested that Kimbrough be placed in a comprehensive drug treatment program. The court also stated that it was imposing a sentence that was "sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. Section 3553(a)."

The record demonstrates the district court's "awareness of the § 3553(a) factors and how those factors apply" in Kimbrough's case. *See United States v. Wheaton*, 517 F.3d 350, 371 (6th Cir. 2008). The court's explanation of the sentence imposed satisfies *Rita*'s requirement to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for his own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

Kimbrough also contends that the district court's sentence was unreasonable because it did not depart below the crack guidelines, despite the crack-powder disparity recognized in *Kimbrough v. United States*, 552 U.S. 85 (2007). This argument too must be rejected. The record reflects that the district court recognized that the Guidelines as a whole are advisory. *Cf. United States v. Townsend*, 286 F. App'x 285, 286 (6th Cir.) (holding that a district court's refusal to sentence below the crack guidelines despite crack-powder disparity recognized in *Kimbrough* was not error where it was clear

-10-

from the record that the court recognized its authority and opted not to use lower offense level), *cert. denied*, 129 S. Ct. 478 (2008); *see also United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2005) (holding that the application of the crack guidelines is not *ipso facto* unreasonable); *United States v. Jones*, 489 F.3d 243, 253 (6th Cir. 2007) (same; citing *Caver*).

### III.  Conclusion

The judgment of the district court is AFFIRMED.