**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0240n.06

No. 09-5822

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Apr 18, 2011**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| COREY CRADDOCK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |
| _____ | ) | |

**Before: SUHRHEINRICH, MOORE, and COOK, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-appellant Corey Craddock challenges the district court's application of a two-level enhancement to his base offense level pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2D1.1(b)(1) (2008), for possessing a firearm during a drug offense. Because the district court's factual finding that Craddock possessed the firearm during the relevant drug transaction was not clearly erroneous and because Craddock did not show that it was clearly improbable that the firearm was connected to the drug transaction, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND & PROCEDURE**

On August 26, 2008, Craddock was indicted on five counts of "distribut[ing] five grams or more of a mixture and substance containing cocaine base" in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(B) (2006),[1] and one count of possessing a firearm "having previously been convicted in court of a crime punishable by imprisonment for a term exceeding one year" in violation of 18 U.S.C. § 922(g). R.1 (Indictment). The drug-distribution counts resulted from a series of five controlled purchases of cocaine base conducted by the Chattanooga Police Department using a confidential informant ("CI") over the period of time from January 4, 2008 to February 22, 2008. The single firearm count was based on the allegation that, on January 17, 2008, as part of one of the sales of cocaine base, Craddock also sold a .32-caliber Smith & Wesson revolver to the CI. Craddock pleaded guilty pursuant to a plea agreement to one of the five distribution counts ("Count One" of the indictment) and to the felon-in-possession-of-a-firearm count ("Count Four" of the indictment). The government dismissed the other four distribution counts.

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"), in which it calculated the advisory sentencing range pursuant to the Guidelines. Because

---

[1]Pursuant to the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, the quantity of "mixture or substance containing cocaine base" that triggers § 841(b)(1)(B)'s mandatory minimum sentence of 60 months of imprisonment was increased from five grams to twenty-eight grams. We have held, however, that the Act does not apply retroactively. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010), *cert. denied*, 79 U.S.L.W. 3539 (U.S. Mar. 21, 2011) (No. 10-8937). Additionally, the United States Sentencing Commission recently promulgated an amendment to the Guidelines to implement the Act that will be effective November 1, 2011, absent congressional action to modify or reject the amendment. News Release, U.S. Sentencing Comm'n, U.S. Sentencing Commission Promulgates Permanent Amendment to the Federal Sentencing Guidelines Covering Crack Cocaine, Other Drug Trafficking Offenses (Apr. 6, 2011), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs/Newsroom/Press_Releases/20110406_Press_Release.pdf. The Commission currently is considering whether the amendment should apply retroactively. *Id.*; *see also* 28 U.S.C. § 994(o), (u) (providing the Commission with the power to decide whether to amend the Guidelines and whether and to what extent an amendment will be retroactive).

the distribution count and firearm count "involve the same victim and the same act or transaction," the two counts are "grouped" pursuant to U.S.S.G. § 3D1.2(a), and the higher of the offense levels calculated for the two counts in the group is used as the adjusted offense level. U.S.S.G. § 3D1.3.

With respect to the distribution count, U.S.S.G. § 2D1.1(a)(3) instructs that the offense level is determined pursuant to the drug quantity table in § 2D1.1(c). The drug quantity for purposes of the table, however, is not limited to the quantity involved in the count to which the defendant pleaded guilty. *See* U.S.S.G. § 2D1.1 cmt. n.12 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level."). Rather, the district court must determine the drug quantity attributable to the defendant as "relevant conduct" under U.S.S.G. § 1B1.3. *See United States v. Gill*, 348 F.3d 147, 151–52 (6th Cir. 2003) (explaining "relevant conduct" under § 1B1.3 with respect to calculating drug quantities). Therefore, although Craddock sold 18.9 grams of cocaine base to the CI in the particular transaction underlying Count One to which he pleaded guilty, the drug quantity for purposes of the Guidelines table is the total amount of cocaine base that Craddock sold to the CI in the five transactions. Pursuant to the factual basis of Craddock's plea agreement, Craddock sold a total of 50 grams of cocaine base to the CI. The base offense level for distributing 50 grams of cocaine base is 30. U.S.S.G. § 2D1.1(c)(5) (2008). The PSR included a two-level enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon, resulting in an adjusted offense level of 32 for Count One, the drug-distribution count.

With respect to the felon-in-possession-of-a-firearm count, U.S.S.G. § 2K2.1(a)(4)(A) provides for a base offense level of 20. The PSR included a four-level enhancement under

§ 2K2.1(b)(6) for use or possession of a firearm "in connection with another felony offense," resulting in a total offense level of 24. However, use or possession of a firearm in connection with another offense also triggers the cross-reference provision in § 2K2.1(c)(1)(A), which instructs the district court to apply the offense level from the guideline for the other offense if it is greater than the offense level from the firearms guideline in § 2K2.1. To determine the offense level for the cross-referenced guideline, § 2K2.1(c)(1)(A) refers the district court to the provision for attempts, solicitations, or conspiracies in § 2X1.1, which, in turn, refers the district court to the guideline for the substantive offense—here, the drug guideline in § 2D1.1. Therefore, pursuant to the cross-reference in § 2K2.1(c)(1)(A), the adjusted offense level for the firearm in Count Four is also 32. Because both counts in the group have the same offense level, Craddock's adjusted offense level for the group is 32.[2] The PSR subtracted three points for acceptance of responsibility from the adjusted offense level of 32 for a total offense level of 29. Using Craddock's total offense level and his criminal history category of VI, the PSR calculated the advisory Guidelines range as 151 to 188 months of imprisonment.

At sentencing, Craddock objected to the application of § 2D1.1(b)(1)'s two-level enhancement for possessing a dangerous weapon during a drug offense. He argued that the drugs and the firearm were not part of the same transaction. In response, the government called Officer

---

[2]Even if the district court disagreed with the PSR's calculations and determined that Craddock did not possess or use the firearm "in connection with" another offense such that the cross-reference provision in § 2K2.1(c)(1)(A) was not applicable, Craddock's offense level nevertheless would be driven by the drug guideline pursuant to the grouping provision, U.S.S.G. § 3D1.3.

Matthew Hennessee of the Chattanooga Police Department as a witness to testify about his involvement in the investigation of Craddock. Hennessee testified that, at a secure location on January 17, 2008, he and other officers first monitored a telephone call between the CI and Craddock during which the two arranged that the CI would meet Craddock at Craddock's house in fifteen minutes and would pay Craddock $650—$500 for 14 grams of cocaine base and $150 for a .32-caliber Smith & Wesson revolver. The officers then searched the CI's vehicle and person to ensure that there were no drugs or weapons present prior to the transaction. They also searched a second person who was going with the CI to Craddock's house for the transaction. The officers fitted the CI with camera recording equipment and turned on the equipment. Then the CI and his companion drove from the secure location to Craddock's residence while the officers followed them and observed them going into the residence. The officers observed the companion come out of the house first and wait for the CI in the front yard. During this time, no one approached the companion. The CI emerged from the house five to seven minutes after entering it, and the CI and his companion left Craddock's house. The officers followed them back to another secure location. While driving to the secure location, the CI called Hennessee and said that he got the firearm. At the location, the officers searched the informants and obtained the drugs (later determined to be around 12 grams of cocaine base) and the firearm from the CI. The firearm was located in the CI's coat pocket. The officers also debriefed the CI on what happened during the time inside Craddock's house. Hennessee testified that the CI said that he gave Craddock $650, that Craddock had the firearm in his hand when he gave the CI the drugs, and that Craddock then gave the firearm to the CI. The CI

also said that there were other people in the residence at the time of the transaction. Hennessee further testified that there were no fingerprints found on the firearm.

In addition, Hennessee testified about the drug transaction that occurred on January 4, 2008. He testified that the CI was supposed to purchase a firearm during that transaction but Craddock said that the firearm was not at his house. Craddock offered to get the firearm and leave it in a vehicle in front of his house for the CI to come back and pick up. Hennessee also discussed a document filed by Craddock in a separate civil case in which Craddock alleged that "TFO Agent Matthew Hennessee employed a convicted felony confidential informant to come in to my home with a video record device hidden on him to purchase a Tennessee controlled substance and a firearm without probable cause and without a state action search warrant." R.46 (Sent. Hr'g Tr. at 23).

During defense counsel's cross-examination of Hennessee, counsel played portions of the video recording for the district court to view.[3] Hennessee testified that the video shows Craddock and the CI exchange the money and the drugs but does not show the firearm at any time, and that Craddock and the CI never mention the firearm during their conversation recorded on the video.

After Hennessee's testimony, defense counsel and the district court engaged in a colloquy regarding the evidence and different possibilities for how the CI obtained the firearm—from Craddock or a second person in the house but not visible on the video because of the angle of the camera, from the CI's companion, or from another place such as the car. Defense counsel admitted

---

[3]To protect the identity of the CI, the portion of Hennessee's testimony that involved playing the video was conducted with counsel in the district court's chambers. Craddock waived his presence for this portion of the hearing.

that Craddock had no evidence to refute the government's evidence that the firearm was present in Craddock's house. Defense counsel, however, argued that the government must show that Craddock knew that the firearm was present at that time. Defense counsel's arguments relied almost entirely on the fact that the video does not show the firearm. In rebuttal, the government reiterated the evidence from Hennessee's testimony and also raised the fact that pursuant to Craddock's plea agreement, Craddock admitted selling a .32-caliber Smith & Wesson firearm to the CI on January 17, 2008. At the completion of argument, the district court rejected Craddock's objection to the two-level enhancement.

The district court then adopted the PSR's calculation of the Guidelines range and provided counsel and Craddock an opportunity to address the court regarding an appropriate sentence. Defense counsel requested a below-Guidelines sentence, arguing that Craddock's criminal history category overrepresented the seriousness of his criminal history, and the government requested a sentence in the low-to-middle range of the Guidelines. The district court ultimately sentenced Craddock to 169 months of imprisonment for the drug-distribution count and 120 months for the firearm count, to be served concurrently. The sole issue on appeal is the district court's application of § 2D1.1(b)(1)'s two-level enhancement for possessing a firearm.

## II. ANALYSIS

Sentencing Guideline § 2D1.1(b)(1) instructs the district court to apply a two-level enhancement to the defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1) (2008). The application notes further direct that the

enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1 cmt. n.3. "The government bears the burden of showing by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon." *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003) (internal quotation marks omitted). "The enhancement applies if the firearm is possessed during 'relevant conduct,' and not merely if a weapon is possessed during the commission of the offense." *United States v. Kimbrough*, 376 F. App'x 592, 596–97 (6th Cir. 2010) (unpublished decision) (citing *United States v. Faison*, 339 F.3d 518, 520–21 (6th Cir. 2003); *United States v. Armour*, 38 F.3d 1217, 1994 WL 560874, at *3 (6th Cir. 1994) (unpublished table decision), *cert. denied*, 513 U.S. 1181 (1995), 514 U.S. 1028 (1995)). "Once the government meets its burden of showing that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense. The burden then shifts to the defendant to show that it was clearly improbable that the weapon was connected with the crime." *Darwich*, 337 F.3d at 665 (internal quotation marks and citation omitted).

A district court's determination that the defendant possessed a firearm during the commission of a drug offense or relevant conduct is a factual finding that we review for clear error. *Id.* at 664. A factual "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (internal quotation marks omitted). "We will uphold the district court's decision as long as it has interpreted the evidence in

a manner consistent with the record," *Darwich*, 337 F.3d at 664, even if we are convinced that we would have weighed the evidence differently, *Anderson*, 470 U.S. at 573–74. "However, if factual findings of the district court are not challenged, and only the application of those facts as to the Guidelines is challenged, then our review is de novo." *United States v. Benson*, 591 F.3d 491, 504 (6th Cir.) (citing *United States v. Chalkias*, 971 F.2d 1206, 1216 n.12 (6th Cir.), *cert. denied*, 506 U.S. 926 (1992)), *cert. denied*, 130 S. Ct. 1919 (2010).

On appeal, Craddock does not challenge the district court's finding that he possessed the firearm. *See* Appellant Br. at 12 ("In this case, while [Craddock] admitted to possessing the firearm, there is no proof that the drugs were in the same place."). Rather, Craddock argues that the firearm and drug "transactions were separate" and that "there is no proof that the sale of the gun coincided with the sale of the drugs." *Id.* Craddock also argues that "[t]here was nothing put forth by the Government that showed [Craddock] had the gun and the drugs in the same room." *Id.*

To the extent that Craddock is challenging the district court's finding that he possessed the firearm *during "relevant conduct"*—i.e., during the drug transaction that took place in Craddock's house on January 17, 2008, we conclude that the district court did not clearly err. Craddock admits, as the district court stated at the sentencing hearing, that the CI's statement that Craddock was holding the firearm during the exchange of the drugs and then handed the firearm to the CI is evidence that Craddock actually possessed the firearm during the drug transaction. *Id.*; *see* R.46 (Sent. Hr'g Tr. at 54–55); *see also United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) ("A person who knowingly has direct physical control over a thing at a given time is then in actual

possession of it." (internal quotation marks omitted)). Because the video of the transaction does not

show the firearm, the district court also considered whether Craddock constructively possessed the

firearm during this time. "Constructive possession of an item is the ownership, or dominion or

control over the item itself, or dominion over the premises where the item is located." *Darwich*, 337

F.3d at 665 (internal quotation marks omitted). The district court engaged in a lengthy and

thoughtful discussion with defense counsel regarding the evidence and different possible scenarios

for how the CI obtained the firearm. Relying on Hennessee's testimony that the officers searched

the CI and his companion, as well as the CI's car, for a firearm prior to the transaction at the secure

location and observed the informants during the drive to and from Craddock's house, the district

court concluded that the firearm was present in Craddock's house during the drug transaction,

regardless of how the CI ultimately obtained it. The district court also considered defense counsel's

arguments that there was no evidence that Craddock knew of the firearm, *see Bailey*, 553 F.3d at

944–46 (explaining that the theory of constructive possession requires proof that the defendant had

knowledge of the firearm and the intention to exercise control over it), and that there were other

people in the house, *see id.* at 944–45 n.3 ("[W]here the defendant is in nonexclusive possession of

premises on which illicit contraband is found, it cannot be inferred that he knew of the presence of

such contraband and had control of it, unless there are other incriminating statements or

circumstances tending to buttress such an inference." (alterations omitted) (internal quotation marks

omitted)). The district court relied on Craddock's admission in the factual basis of his plea

agreement that he sold the firearm to the CI on January 17, 2008, as evidence that Craddock knew

that the firearm was in the house and exercised control over the firearm by selling it to the CI along with the drugs. Hennessee's testimony regarding the phone conversation that took place prior to the transaction, in which Craddock and the CI arranged that the CI would pay Craddock $650 in exchange for the firearm and the drugs, further supports the district court's finding that Craddock possessed the firearm during the drug transaction that occurred in his house on January 17, 2008. Therefore, the district court did not clearly err in finding that the government had established by a preponderance of the evidence that Craddock possessed the firearm during the drug transaction on that day.

Once the district court found that Craddock possessed the firearm during the drug transaction, a presumption arose that the firearm was connected to the transaction, and the burden shifted to Craddock to show that it was "clearly improbable" that the firearm was connected with the transaction. *See Darwich*, 337 F.3d at 665. "Unlike the four-level enhancement under Guidelines § 2K2.1(b)(6) for a felon who possesses a firearm 'in connection with another felony offense,' [§ 2D1.1(b)(1)] requires only that the defendant 'possess' the gun during the drug offense." *United States v. Minifee*, Nos. 09-1528, 09-1530, 2010 WL 5376861, at *3 (6th Cir. Dec. 22, 2010) (unpublished decision), *cert. denied*, 131 S. Ct. 1587 (2011).

The district court provided Craddock the opportunity to show that it was "clearly improbable" that the firearm was connected with the drug transaction. In response, Craddock relied on the fact that the firearm is not visible on the video and was not mentioned in conversation until the CI called Hennessee on the way from Craddock's house to the secure location. Although the

video raises questions regarding exactly how the CI received the firearm during the exchange, this uncertainty does not make the connection between the drug sale and Craddock's possession of the firearm "clearly improbable." *Cf. United States v. Wilson*, 67 F.3d 300, 1995 WL 579566, at *1 (6th Cir. 1995) (unpublished table decision) (rejecting argument that the connection was "clearly improbable" when the handguns were not found in the same room as the drugs). Craddock possessed a .32-caliber Smith & Wesson revolver in his house, from which he was selling drugs, for the purpose of selling the revolver to the same person to whom he was selling drugs. The "increased danger of violence" from his possession of the firearm, U.S.S.G. § 2D1.1 cmt. n.3, is not reduced by the fact that he sold it to the CI. *See United States v. Dunlap*, 209 F.3d 472, 479 (6th Cir. 2000) (rejecting defendant's challenge to enhancement under § 2D1.1(b)(1) for rifle sold to CI and stating that the defendant "could have aggressively deployed his rifle . . . at any moment prior to his transfer of that weapon to the CI"), *abrogation on other grounds recognized in United States v. Camacho-Arellano*, 614 F.3d 244, 248 (6th Cir. 2010). Craddock has not pointed to any circumstances, such as the type of the firearm, to suggest that the firearm was not connected to his drug sales. *See id.*; *cf. United States v. Zimmer*, 14 F.3d 286, 290–91 (6th Cir. 1994) (concluding that the defendant demonstrated that it was "clearly improbable" that his loaded hunting rifle was connected with his "marijuana *manufacturing* operation"). We conclude that Craddock has failed to meet his burden to show that it was "clearly improbable" that the firearm was connected to the drug transaction. Thus, the district court did not err in applying the two-level enhancement under § 2D1.1(b)(1).

Finally, we note that Craddock, in a pro se filing in this court, has alleged a claim of ineffective assistance of counsel. We generally do not address pro se arguments when the defendant is represented by counsel. *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 538 (2010). Nor do we generally review on direct appeal claims of ineffective assistance of counsel because "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005), *cert. denied*, 547 U.S. 1034 (2006). The record and legal arguments are not adequately developed for us to decide Craddock's ineffective-assistance-of-counsel claim at this time. It is therefore more appropriate for Craddock to raise the claim in a post-conviction proceeding under 28 U.S.C. § 2255.

### III. CONCLUSION

Because the district court did not err in applying a two-level enhancement to Craddock's offense level for possessing a firearm during a drug offense, we **AFFIRM** the judgment of the district court.