NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0525n.06

No. 09-6018

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 29, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| JASON CRAIN, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Defendant-Appellant. | ) | DISTRICT OF TENNESSEE |
| | ) | |

Before:     KEITH, GIBBONS, and WHITE, Circuit Judges.

**PER CURIAM.**  Jason Crain appeals the denial of his pretrial motion to suppress evidence

of drugs discovered in his car during a traffic stop and his subsequent conviction and sentence for

possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D),

and possession of cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

Because Crain waived his right to appeal the denial of his motion to suppress, we **AFFIRM** the

district court's pretrial determination.  Additionally, because the district court did not err in applying

the two-level enhancement for possession of a firearm in furtherance of drug trafficking and his

sentence was both procedurally and substantively sound, we **AFFIRM** his sentence as well.

**I.  BACKGROUND**

In January 2007, Sergeant David Chambers of the Washington County Sheriff's Office

received information that Jason Crain was distributing cocaine and marijuana in Johnson City,

Tennessee, and using a storage facility to store the drugs.  Chambers conveyed this information to

Agent Brian Vicchio, an investigator with the Johnson City Police Department assigned to the local Drug Enforcement Administration (DEA) Task Force. Subsequent to a subpoena and investigation, on January 31, 2007, Chambers executed a federal search warrant of Crain's storage unit. He discovered cash and the indicia of drug distribution. Based on this information, the officers obtained a search warrant for Crain's home on February 1, 2007.

Officer Jeff Jenkins has been an officer with the Johnson City Police Department for sixteen years, and has been a canine officer for twelve years. On February 1, 2007, Vicchio requested Jenkins' assistance as they investigated Crain. Vicchio asked that Jenkins watch out for Crain's Gold Honda Accord, and if he did happen to leave his apartment that day, that Jenkins attempt to obtain probable cause to make a traffic stop. He also informed Jenkins of the search warrant executed and the discovery of drugs at the storage unit.

Pursuant to Vicchio's request, Jenkins and his drug dog, Tigger, took a position where they could follow Crain's vehicle if he left his residence. After waiting approximately three hours, Crain did leave his residence in the Honda. Accordingly, Jenkins pulled into traffic behind him.

Jenkins "paced" Crain's car, meaning he measured Crain's speed by driving precisely the same speed as defendant and observing his own speed at that time. Jenkins is trained in this method of measuring speed. Jenkins observed Crain driving over the 45 miles per hour speed limit. It is undisputed that Crain was speeding, though by how much is unclear on the record. Nevertheless, Jenkins activated his lights and pulled Crain over around 2:12 p.m. He requested back-up assistance.

Jenkins walked to Crain's window and told him that he was speeding. Jenkins then went back to his car and wrote up a warning citation. Jenkins then returned to Crain's car and issued the citation, explaining that Crain was not receiving a ticket. Thereafter, Jenkins asked Crain whether he had a large sum of money, any guns or narcotics in the vehicle. Crain responded that he had over $1,000 in cash on him because he was going to pay his rent. Jenkins then asked for permission to search the car; Crain refused. Jenkins instructed Crain to get out of the car and stand with his back-up officer (who arrived while Jenkins was writing the citation), as Jenkins conducted a canine search of his vehicle. Crain complied. Jenkins went back to his car, got Tigger, and initiated the search. Tigger alerted Jenkins to the rear door of the driver's side door twice. Jenkins then conducted a search of Crain's vehicle. First, he searched the passenger compartments, finding nothing. Then he opened the trunk of the car, using the keys he extracted from the ignition. Upon opening the trunk, Crain put up his hands and said "You've got me." Jenkins, surprised, momentarily stopped the search and asked Crain what he meant. Crain said, "You've got me . . . There's a shit load of dope in there." He motioned towards the suitcase in the trunk, and said "You've just had the best day you've ever had." Jenkins then opened the suitcase and found scales, powder, and bundles of drugs. Thereafter, Jenkins notified Vicchio of what he had found. At 3:08 p.m., almost an hour after the stop had been initiated, another vehicle arrived to transport Crain to jail.

On August 14, 2007, a federal grand jury returned a five-count superceding indictment against Crain, charging him with distribution and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); possession with intent to

3

distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); and possession of four firearms in furtherance of the drug-trafficking crimes, in violation of 18 U.S.C. § 924(c).

Crain moved to suppress the drugs and paraphernalia found during the search of his car, arguing that Jenkins violated his Fourth Amendment right when he conducted the canine search of the vehicle after the conclusion of his traffic stop. A magistrate judge held an evidentiary hearing on September 13, 2007 to consider Crain's pretrial motion. On September 18, 2007, the magistrate judge issued a report recommending that the district court deny Crain's motion to suppress. Neither Crain nor the government filed objections to that report, despite the report's indication that all objections must be filed within ten days or appeal would be waived. On October 4, 2007, the district court adopted the magistrate judge's report and entered an order denying the motion to suppress. Thereafter, Crain proceeded to trial on June 12, 2008. The jury found Crain guilty of possession with intent to distribute marijuana, cocaine and cocaine base. The jury acquitted him of intent to distribute five kilograms of cocaine and possession of a firearm in furtherance of drug trafficking.

The Presentence Report (which the district court adopted as its findings of fact at the sentencing hearing) set Crain's offense level at thirty, including a two-level enhancement for possession of a firearm in connection with his offense pursuant to U.S.S.G. § 2D1.1, and his criminal history category of II, placing him within a Guidelines range of 108 to 135 months of imprisonment. Crain objected to the Presentence Report on the grounds that the jury found him not guilty of possession of a firearm in furtherance of a drug trafficking offense; thus he argued that § 2D1.1

should not apply. The probation officer did not change the Presentence Report, indicating that Crain could not show that it was clearly improbable that the weapon was connected with the offense. Crain again raised this objection at his sentencing hearing on August 10, 2009. The district court found that the enhancement applied. The district court, noting that sentencing within the Guidelines was beneficial for consistency, went on to consider the appropriate 18 U.S.C. § 3553(a) factors and determined that a sentence within the Guidelines range was appropriate. Accordingly, the district court sentenced Crain to sixty months of imprisonment for possession of marijuana, and 120 months of imprisonment for possession of cocaine and cocaine base, all to run concurrently for a total sentence of 120 months of imprisonment. Crain now timely appeals.

## II. ANALYSIS

On appeal, Crain argues that the district court erred in: (a) denying his motion to suppress; and (b) failing to give him a reasonable sentence.

### A. The Denial of Crain's Motion to Suppress

The district court referred Crain's pretrial motion to suppress to a magistrate judge, who issued a Report and Recommendation denying the motion. Crain failed to object to the report. This circuit requires that "a party must file objections to the magistrate judge's report and recommendation with the district court within the time permitted, or else waive the right to appeal." *United States v. Vanwinkle*, --- F.3d ---, No. 09-3462, 2011 WL 1775676, at *4 (6th Cir. May 11, 2011) (citing *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981)); s*ee also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (affirming the *Walters* rule as a valid exercise of the court of appeal's supervisory power). "[B]y precluding appellate review of an issue not contained in objections to a

magistrate's report, this rule of preservation prevents a litigant from sandbagging the district judge by failing to object and then appealing." *Peoples v. Hoover*, 377 F. App'x 461, 463 (6th Cir. 2010) (quoting *Arn*, 474 U.S. at 147-48) (internal quotation marks omitted) (alteration in original). However, this court has declined to apply the waiver rule in exceptional circumstances where "the district court's error is so egregious that failure to permit appellate review would work a miscarriage of justice." *United States v. 1184 Drycreek Rd.*, 174 F.3d 720, 726 (6th Cir. 1999).

Crain argues that his failure to file objections to the report should be excused because the constitutional error that occurred seriously affected the fairness, integrity or public reputation of judicial proceedings. Crain argues that "the interests of justice" require that we consider the merits of his claim, but he fails to demonstrate how this case is exceptional. *See Javaherpour v. United States*, 315 F. App'x 505, 510 (6th Cir. 2009) ("This court may choose not to apply the waiver rule if exceptional circumstances are present that justify disregarding the rule in the interests of justice." (citation and editorial marks omitted)). Particularly when comparing this case to other instances where we have excused the default in the interest of justice, it is clear that Crain's situation is not exceptional. *See Souter v. Jones*, 395 F.3d 577, 586 (6th Cir. 2005) (excusing appellant's failure to file objections to the magistrate judge's report in the interest of justice because the circuit had not decided an en banc decision on point to his case at the time of the magistrate judge's recommendation, the statute of limitations had run on his state-law claim, and the majority of the report found in his favor which suggested that he should not have objected anyway). Here, Crain had ample incentive to object if he thought the magistrate judge's ruling erroneous. In any event, we find neither egregious error nor a miscarriage of justice. Therefore, we decline to excuse the

default. Because Crain waived his right to appeal the denial of his motion to suppress when he failed to object to the magistrate judge's report, we **AFFIRM** the district court's denial of his pretrial motion to suppress evidence.

**B. Sentence Reasonableness**

This Court reviews a defendant's sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). "[A] district court abuses its discretion when it commits a 'significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (quoting *Gall*, 552 U.S. at 51). The district court's factual findings in calculating the Sentencing Guidelines range are reviewed for clear error, but its legal conclusions are reviewed de novo. *United States v. Woods*, 604 F.3d 286, 290 (6th Cir. 2010) (citation omitted).

*1. Application of a Two-Level Firearm Enhancement*

The Sentencing Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense. U.S.S.G. § 2D1.1(b)(1). A district court's finding that the defendant possessed a firearm during a drug offense is a factual finding that this court reviews for clear error. *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008). "A finding of fact is clearly erroneous when, although there may be some

evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. (quotation marks and citation omitted).

The two-level enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. The government bears the initial burden to prove by a preponderance of the evidence that "(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007). "Constructive possession of an item is the ownership, dominion or control over the item itself, or *dominion over the premises where the item is located*." *Wheaton*, 517 F.3d at 367 (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)) (emphasis in *Wheaton*). "The enhancement applies if the firearm is possessed during 'relevant conduct,' not merely if a weapon is possessed during the commission of the offense." *United States v. Kimbrough*, 376 F. App'x 592, 596-97 (6th Cir. 2010). If the government meets its burden, a rebuttable presumption arises that the weapon was connected to the offense. *Wheaton*, 517 F.3d at 367. The defendant then has the burden to show that it was "clearly improbable" that the firearm was connected to the offense. *Kimbrough*, 376 F. App'x at 596 (citing *Catalan*, 499 F.3d at 606). If the defendant fails to meet this burden, the district court should apply the enhancement. *Id*.

Crain argues that the government failed to demonstrate that he actually or constructively possessed a weapon in connection with the commission of the offense. He argues that the facts established during trial demonstrate that no drug-related activity occurred at his wife's residence, and

that he did not live at the residence. On appeal, Crain concedes that he did move back into the home as late as July 2006, but argues that any indicia of ownership ends at that time. We disagree.

The Presentence Report indicates that Crain obtained the storage unit where the officers discovered large quantities of drugs on January 10, 2007. In that application, he listed his permanent residence as 3569 Greenwood Drive, the location where the guns were found. No more than three weeks later, on February 1, 2007, Crain was arrested. Crain argues that the Greenwood location was his father's old home and he no longer lived there; rather, his estranged wife lived there and he resided in a separate apartment. However, the box to the digital scales found in his car with the drugs at the time of his arrest was located at the Greenwood residence; agents found a key in the kitchen of the Greenwood residence that opened the door to his storage unit containing drugs; his "hip hop stuff" for one of his side businesses was found at Greenwood Drive, as well as a computer with a picture of Crain holding a large amount of cash. Though Crain produced evidence that he lived in a separate apartment with his girlfriend, one may have dominion over a premises even though others may also have access to or control over the location. *See Wheaton*, 517 F.3d at 367. Here, the district court reasonably found that, though Crain's estranged wife also had control of the Greenwood residence, Crain still maintained dominion over the location. Particularly the fact that he listed the Greenwood residence as his permanent address only a few weeks before his arrest reinforces the conclusion that he maintained dominion over the property, and thus constructive possession of the items within it. *See Wheaton*, 517 F.3d at 367 (affirming § 2D1.1 enhancement where firearms were found in the couch of the location where defendant was arrested because he'd stayed at the house for an extended period of time and had access to the handgun); *United States v.*

*Williams*, 345 F. App'x 979, 981 (6th Cir. 2009) (per curiam) (affirming § 2D1.1 enhancement where firearms were found in the defendant's mother's residence even though the defendant lived in a separate apartment). Given these facts, the district court correctly found that the government met its burden to establish Crain's constructive possession of the firearms in connection to his drug trafficking offenses.

Accordingly, the burden then shifted to Crain to show that it was "clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1(b)(1), n.3. In determining whether it was clearly improbable that a firearm was related to the particular drug offense, we may consider many factors, including "the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002); *see also Kimborough*, 376 F. App'x at 597. Here, given the evidence on the record, the district court did not err in finding that Crain failed to demonstrate clear improbability. First, the pistols were found in the kitchen cabinet near crack cocaine and the box for the digital scales used to weigh drugs. The rifle and ammunition found in the basement were nearby two coolers, each of which had marijuana residue inside them. Next, Crain does not argue that the Glock pistol, the two .22 caliber pistols, the rifles and the ammunition are uncommon weapons when it comes to a drug conspiracy. *See Moses*, 289 F.3d at 851; *United States v. Maynard*, 94 F. App'x 287, 292 (6th Cir. 2004). Finally, Crain never explained a non-drug related reason why the firearms were found near the drugs in the home. His estranged wife did not testify on his behalf and Crain never indicated that she was involved in drug trafficking.

Therefore, we cannot say that the district court clearly erred in finding that Crain constructively possessed the firearms and applying the two-level enhancement under the Guidelines.

### 2. *Crain's Request for a Sentence Below-Guidelines*

We review a district court's sentence to ensure that the sentence is both procedurally and substantively sound. *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). Sentences within the Guidelines range are afforded a rebuttable presumption of reasonableness. *United States v. Bailey*, 488 F.3d 363, 368 (6th Cir. 2007). Additionally, a district court must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). This does not require a lengthy explanation. *Id.*

Crain requested that the district court sentence him below the Guidelines range, based upon several § 3553(a) factors: his military service, his children, his efforts to cooperate with law enforcement, and his commitment to not being a recidivist. He argues that the district court failed to consider these factors when it decided to sentence him within the Guidelines range, and moreover that the district court erred in considering the Guidelines mandatory. However, upon review of the record it is clear that the district court gave more than "mere lip-service" to the § 3553 factors. The district court explained at length that, while it found the Guidelines as an important factor in determining sentence, other factors set forth in § 3553 must be considered. Based upon Crain's unwillingness to accept responsibility for his actions which led to his arrest, the district court decided to sentence him within the Guidelines range. In fact, the district court briefly considered sentencing him above the Guidelines range, but ultimately decided against it based upon the very factors that

Crain now argues were not considered. The record does not suggest that the district court abused its discretion, even if it did express a positive opinion of the usefulness of the Sentencing Guidelines. Thus, Crain's sentence was procedurally sound.

Crain's sentence was also substantively reasonable. As discussed above, the Guidelines range was properly calculated to include the two-level enhancement for possession of a firearm. Crain was sentenced to 120 months' imprisonment, within the Guidelines range of 108 to 135 months' imprisonment. Accordingly, Crain's sentence is afforded a rebuttable presumption of reasonableness. *Wheaton*, 517 F.3d at 371. On appeal, Crain fails to rebut this presumption by demonstrating that the district court's sentence was unreasonable. The district court, sentencing Crain within the Guidelines range, explained that its sentence was not greater than necessary after weighing the § 3553(a) factors. While Crain may disagree with the sentence, we cannot say upon review that it was unreasonable. Thus, we **AFFIRM** his sentence.

### III. CONCLUSION

For the reasons stated above, the denial of the pretrial motion to suppress evidence is **AFFIRMED**. The sentence imposed by the district court is also **AFFIRMED**.