*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0335p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 06-5259

*v.*

SALVIANO CATALAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 03-00164—John T. Nixon, District Judge.

Submitted: July 25, 2007

Decided and Filed: August 22, 2007

Before: MOORE and COOK, Circuit Judges; and ADAMS, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** G. Kerry Haymaker, HAYMAKER & HEROUX, Nashville, Tennessee, for Appellant. Thomas M. Kent, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

COOK, Circuit Judge. Salviano Catalan was convicted for conspiracy to possess with intent to distribute more than 500 grams of cocaine and for the underlying possession. Catalan appeals his convictions, arguing that it was based on insufficient evidence, and his sentence, arguing that the district court should have neither applied a two-level enhancement for possessing a firearm nor imposed a tolling condition of supervised release. We affirm Catalan's conviction, but vacate his sentence and remand for removal of the tolling condition in light of *United States v. Ossa-Gallegos*, ___ F.3d ___, No. 05-5824, 2007 U.S. App. LEXIS 14708 (6th Cir. June 21, 2007) (en banc).

Before the raid that led to this case, Lamont Johnson, a confidential informant, was helping the police investigate Roberto Cruz's drug deals. As Johnson arrived at Cruz's house to see if Cruz had cocaine for sale, Johnson saw Catalan leave in a light brown truck. Johnson arranged to buy a

_____

[*] The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

1

kilogram, and Cruz told him that Catalan would supply the cocaine for $21,000. Cruz would serve as an interpreter because Catalan cannot speak English. Cruz called Catalan to come back to the house, and when he did, Johnson saw him carrying a bag that looked like it contained a one-kilogram brick of cocaine. Johnson called Detective Melzoni, one of his contacts at the police department, and told him that Catalan was at Cruz's house with the drugs. After corroborating Johnson's information with the undercover officers surveilling Cruz's house, Melzoni quickly obtained a search warrant. He led a group of officers into the house, announcing that they were police officers, whereupon Cruz and Catalan ran into two separate bathrooms. Catalan, who had forced his way past Mrs. Cruz into the master bathroom, briefly prevented an officer from entering, but soon yielded. Also in the master bathroom were other drugs and a loaded handgun belonging to Cruz.

Catalan argues, almost as an afterthought, that the evidence was insufficient to support each of his convictions. Catalan merely states the charge, the standard, and the conclusion without an iota of explanation of why the evidence offered at trial would not support a conviction. We require parties to develop their arguments in a non-perfunctory manner at the risk of having them deemed waived. *See, e.g.*, *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004); *United States v. Sandridge*, 385 F.3d 1032, 1035-36 (6th Cir. 2004); *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004). Given Catalan's failure to develop this argument, we deem it waived and affirm his conviction. We note, though, that were we to consider this argument, we would have no difficulty holding the evidence at trial, as summarized above, sufficient to support his conviction.

As for Catalan's sentence, we first address whether the district court erred by applying the two-level firearm-possession enhancement to his drug offense. *See* U.S.S.G. § 2D1.1(b)(1). Post-*Booker*, we consider sentences predicated on a guideline miscalculation to be "procedurally unreasonable." *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006) (citing *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005)). We review "de novo the district court's legal interpretation of the Guidelines, including mixed questions of law and fact." *United States v. Howse*, 478 F.3d 729, 731 (6th Cir. 2007) (quoting *United States v. Settle*, 414 F.3d 629, 630 (6th Cir. 2005)). The district court's factual findings at sentencing are reviewed only for clear error. *See United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007).

Section 2D1.1(b)(1) provides that, when calculating the base offense level for drug offenses, "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." Once the government establishes by a preponderance of the evidence that "(1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense," the burden shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). If he fails to meet this burden, the district court should apply the enhancement. *United States v. Shults*, 68 F. App'x 648, 653 (6th Cir. 2003).

Catalan argues that the government produced no evidence "indicating that [he] possessed or had any knowledge of the possession or existence of the weapon or that it was related to the drug transaction." The government concedes that Catalan did not actually possess the weapon but argues that he constructively possessed it because Cruz was his coconspirator. In this circuit, "possession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct." *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994) (quoting *United States v. Chalkias*, 971 F.2d 1206, 1217 (6th Cir. 1992)). Catalan need not have actually known about the weapon, as reasonable foreseeability is an objective test. *Id.* The question before us, then, is whether a reasonable person would have foreseen that a gun would be present during the commission of the offense.

We have explicitly rejected "the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions." *Cochran*, 14 F.3d at 1133 (citing *United States v. White*, 875 F.2d 427 (4th Cir. 1989)). In *Cochran*, the defendant was in the car with his cousin (the armed coconspirator), who he considered "small time," and who he was with solely for company. *Id.* We distinguished *Cochran* in *Gross*, finding that application of the enhancement was appropriate where the defendant was heavily involved in the drug trade, knew that his coconspirator was as well, and possessed a bulletproof vest. *United States v. Gross*, 77 F. App'x 338, 344 (6th Cir. 2003). And in *United States v. Williams*, we upheld a § 2D1.1(b)(1) enhancement where the defendant "was arrested during the execution of a search warrant at a residence that was clearly the location of much of the [relevant] drug activity" and the loaded handgun was "[n]ear him on a shelf in the room where he was arrested . . . , easily accessible by anyone in the residence." 176 F.3d 301, 307-08 (6th Cir. 1999). We held that "it was not clear error for the district court to find that the government had met its burden of proving by a preponderance of the evidence that Williams constructively possessed a weapon during the course of this conspiracy." *Id.* at 308.

We see this case as closer to *Williams* and *Gross* than to *Cochran*. Catalan traveled from Texas to Tennessee to supply Cruz with 1007 grams of cocaine, worth more than $20,000. In *Cochran*, the defendant purchased only one gram of methamphetamine from his coconspirator, 14 F.3d at 1129, but in *Gross*, the defendant "had sold quantities of powder cocaine up to a quarter kilogram to" one coconspirator and "had distributed several kilograms of cocaine to" another coconspirator, 77 F. App'x at 344. And, as in *Williams*, Catalan was arrested in the room where the gun was located after having struggled with officers attempting to enter that room to arrest him. A reasonable person would have foreseen that Cruz was armed with a dangerous weapon.

The gun was also clearly possessed during the commission of the offense, having been recovered during the raid of the specific sale at issue. The burden then shifts to Catalan to demonstrate a reasonable probability that the weapon was not connected to the offense. *Hill*, 79 F.3d at 1485. Nowhere does Catalan attempt to carry this burden, nor is there any evidence indicating another purpose for the firearm. The district court was not "procedurally unreasonable" in applying the § 2D1.1(b)(1) enhancement.

Finally, Catalan argues that the district court should not have imposed a condition of supervised release tolling the term of release while Catalan is outside the United States. The en banc court recently held that this exact condition is not authorized by statute. *Ossa-Gallegos*, 2007 U.S. App. LEXIS 14708, at *21-22. We thus affirm Catalan's convictions, vacate Catalan's sentence, and remand for resentencing with instructions that the remand be limited to setting forth lawful conditions of supervised release consistent with the en banc court's decision in *Ossa-Gallegos*.