NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0679n.06

No. 19-4079

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 01, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KEVIN BISH, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  On November 1, 2019, defendant Kevin Bish was sentenced to 140 months of imprisonment for his role in a conspiracy to distribute and possess with intent to distribute methamphetamine.  The only issue on appeal is whether the district court properly applied a two-level sentencing enhancement for possession of firearms during the offense. Because the district court did not clearly err, we affirm.

**I.**

From December 1, 2018 until on or about March 27, 2019, defendant Kevin Bish engaged in a conspiracy with Alan Blenman and Brandon A. Butler to distribute methamphetamine.  For most of the conspiracy, Bish was in custody for state misdemeanor offenses.  While he was detained, Bish participated in the conspiracy through his wife Brandy Bish ("Brandy").  Bish called Brandy from a jailhouse phone and directed her to set up drug purchases and sales.  On at least

two occasions, on February 7 and 21, 2019, Brandy sold methamphetamine to a confidential source in the back room of Blenman's garage at Bish's direction.

On February 22, 2019, law enforcement officers executed a search warrant for a garage on Blenman's property. Blenman's garage contained two rooms: a front room that operated as a standard garage and a back room with a separate entrance. During the search, officers found a bag containing a number of firearms and holsters in the back room of Blenman's garage. In the same room, officers found bags of suspected methamphetamine,[1] ammunition, marijuana, and a digital scale labeled "Moneymaker." Some of the items, including the ammunition and marijuana, were found in a safe, to which Brandy had the combination. Bish's fingerprints were not found on any of the items recovered from the garage. The same day that they searched Blenman's garage, officers also searched the Bish residence where they found methamphetamine, a handgun, ammunition, a ledger, and several thousand dollars, which Brandy told officers was payment for one pound of methamphetamine.

On March 27, 2019, defendant Kevin Bish was indicted for conspiracy to distribute and possess with intent to distribute methamphetamine under 21 U.S.C. § 846 and three counts of using a communication facility in furtherance of drug trafficking under 21 U.S.C. § 843(b). On July 8, 2019, Bish pled guilty to the conspiracy charge. As part of the factual basis for the plea agreement, Bish admitted that "in the location from which [he] was distributing methamphetamine . . . [he] was in possession of multiple firearms." DE 37, Plea Agreement. Page ID 102. The plea agreement also stated, however, that the parties "have no agreement regarding the two-level

---

[1]     During the sentencing hearing, Drug Enforcement Administration agent Shaun Moses testified that law enforcement recovered methamphetamine from Blenman's garage. The methamphetamine recovered from the garage, however, was not sent to a lab for testing.

[sentencing] enhancement for the possession of multiple firearms at the location from which the defendant was distributing methamphetamine as part of the conspiracy." *Id.* at Page ID 99.

At Bish's sentencing hearing, the primary dispute was whether the two-level sentencing enhancement for possession of firearms under U.S.S.G. § 2D1.1(b)(1) applied to Bish.[2] Specifically, the parties disputed whether the firearms found in Blenman's garage could be attributed to Bish. The only witness at the hearing was Drug Enforcement Administration agent Shaun Moses. Moses was present during the execution of the search warrant of Blenman's garage and interviewed Bish, Brandy, and Blenman.

In addition to testifying about the guns, drugs, and ammunition recovered from the back room of Blenman's garage, Moses testified about a series of telephone calls Bish made to Brandy while he was in jail. Moses did not listen to the telephone recordings himself, but he reviewed summaries of the recordings prepared by a detective. The transcript of the phone calls was provided as the government's Exhibit 28; the recording itself, which was played for the court during the sentencing hearing, was admitted into evidence. In particular, Moses testified about a telephone call Bish made to Brandy on December 12, 2018. During the call, Bish told Brandy that he wanted her "to get all those guns out of Dad's and take them to Rick's." DE 85-4, Sentencing Ex., Page ID 723. Bish said that the guns "are all in that room, I don't want them left there if I'm gone for a long time. . . . . I just want them to be somewhere safer and secure. . . . It's not very good moisture climate in there I don't want them sitting in there rusting." *Id.* Bish told Brandy that the guns were "hidden back by, they're hidden in there. There in a big bag. And they're hidden. But they're in that room. Believe me, a whole bunch of sh*t ton of them." *Id.* Brandy told Bish that she would move the guns. At the hearing, Moses opined that "Dad" referred to

---

[2] U.S.S.G. § 2D1.1(b)(1) provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S. SENT'G GUIDELINES MANUAL § 2D1.1(b)(1).

Blenman and that he believed Bish was telling Brandy to move guns out of Blenman's garage. Moses admitted, however, that he had no personal knowledge of who "Dad" was and that he was relying on the summary of the report provided by the detective.

At the conclusion of the evidence, the district court initially appeared skeptical of the government's ability to prove that Bish possessed the firearms found in Blenman's garage given that there was no evidence in the record of whether Blenman was "Dad." Ultimately, however, the district court concluded that the enhancement applied. First, the district court determined that the firearms found in Blenman's garage were the firearms Bish described in his phone call with Brandy. The district court relied on Bish's "telephone call and the exhibits, the items [where] they were located, when they were discovered" and Bish's description of "the rooms where [the firearms] were located and where they could be found which [was] consistent with the government's exhibits" showing Blenman's garage. DE 72, Sentencing Hr'g Tr., at Page ID 520:16–24. The district court also found that Bish had control over the firearms because he directed Brandy to move them from Dad's to Rick's. Therefore, the district court found that Bish had constructive possession of the guns even though there was no evidence that Blenman was Dad. The district court did not rely on the factual admission in Bish's plea agreement. Second, the court held that the firearms found in Blenman's garage were used in the commission of the methamphetamine conspiracy because the firearms were found near a digital scale, ammunition, and methamphetamine. Thus, the district court applied the enhancement.

Consequently, the district court sentenced Bish to 140 months of imprisonment. Bish filed this timely appeal, challenging the application of the sentencing enhancement for possession of firearms.

## II.

We review the district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact for clear error.[3] *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). Under the clear-error standard, this court will not overrule the district court's factual finding simply "because we 'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). Rather, we ask "whether on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)).

## III.

Under Sentencing Guideline § 2D1.1(b)(1), a two-level sentencing enhancement is added to a defendant's base offense level if the defendant possessed a dangerous weapon such as a firearm. U.S. SENT'G GUIDELINES MANUAL § 2D1.1(b)(1). For the enhancement to apply, the government must prove two elements by a preponderance of the evidence. *West*, 962 F.3d at 187. First, it must show that "the defendant actually or constructively possessed the weapon." *Id.* (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Hill*, 79 F.3d at 1485 (quoting *United States v. Sanchez,* 928

---

[3]      In his initial brief, Bish argues that the district court's improper application of the Sentencing Guidelines was procedurally unreasonable. (CA6 R. 23, Appellant Br., at 16) (citing *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) ("[W]e consider sentences predicated on a guideline miscalculation to be procedurally unreasonable." (internal quotation omitted))). This court reviews the procedural reasonableness of a defendant's sentence for abuse of discretion. *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020). However, because this appeal concerns a factual dispute, Bish's characterization of the sentence as procedurally unreasonable does not affect the standard of review. *See United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010) ("A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review." (internal quotations omitted)). Furthermore, despite arguing that the district court's decision was procedurally unreasonable, Bish does not claim that the abuse-of-discretion standard applies.

F.2d 1450, 1460 (6th Cir.1991) (abrogated on other grounds)); *see also United States v. Houston*, 813 F.3d 282, 295 (6th Cir. 2016) ("Constructive possession occurs when a person has the power and intention to exercise dominion and control over an object."). Constructive possession can be established by either direct or circumstantial evidence. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). Whether the defendant possessed the firearm is a factual finding that this court reviews for clear error. *West*, 962 F.3d at 187.

Second, the government must demonstrate that the defendant possessed the weapon during the commission of the offense or during relevant conduct. *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). "Relevant conduct" includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* (quoting U.S. SENT'G GUIDELINES MANUAL § 1B1.3(a)(2)); *see also United States v. Ward*, 506 F.3d 468, 475 (6th Cir. 2007) ("Relevant conduct under the Sentencing Guidelines includes: 'in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'"). When determining whether the firearms were connected to the particular offence, this court considers factors such as "the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002) (citing *Hill*, 79 F.3d at 1486).

If the government proves both elements, then "the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (quoting *Hill*, 79 F.3d at 1485). The defendant "must present evidence, not mere argument, in order to meet his or her burden." *Greeno*, 679 F.3d at 514 (citing *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)).

First, the district court did not clearly err by finding that a preponderance of the evidence shows that Bish constructively possessed the firearms found in Blenman's garage. The district court reasoned that it did not need to determine whether Blenman was "Dad" because the call between Brandy and Bish and the exhibits presented at Bish's sentencing hearing were sufficient to find that more likely than not Bish was referring to the firearms found in Blenman's garage when he told Brandy to "get all those guns out of Dad's and take them to Rick's." DE 85-4, Sentencing Ex., Page ID 723. During the call, Bish told Brandy that the guns were "all in that room . . . . they're hidden back by, they're hidden in there. There in a big bag. And they're hidden. But they're in that room. Believe me, a whole bunch of sh*t ton of them." *Id.* He explained that he wanted Brady to move the guns to "Rick's" because it was a poor moisture climate where they were currently stored. *Id.* In sum, Bish told Brandy that the guns were in a big bag hidden in the back in a room with a poor moisture climate. In combination with the knowledge that Bish was directing Brandy to sell methamphetamine from the back room of Blenman's garage, this evidence is enough to prove that Bish was more likely than not referring to the firearms later recovered from Blenman's garage.

Based on the record that the district court considered, we are not left with a definite and firm conviction that the district court's finding was erroneous. In addition, although it is not necessary, Bish's plea agreement lends further support to the finding that Bish constructively possessed the firearms found in Blenman's garage. *Cf. United States v. Webb*, 403 F.3d 373, 381 (6th Cir. 2005) (considering admissions in the plea agreement as a basis for the application of a sentencing enhancement); *United States v. Henderson*, 135 F. App'x 858, 862 (6th Cir. 2005) (same); *United States v. Patino*, 150 F. App'x 453, 457 (6th Cir. 2005) (same). This court may affirm the district court's finding based "on any grounds supported by the record," even if not

explicitly considered by the lower court. *Vowell v. United States*, 938 F.3d 260, 263 (6th Cir. 2019); *City Mgmt. Corp. v. United States Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994). Thus, even though the district court did not rely on it, this court can consider Bish's plea agreement as additional support for the finding that he was referring to the firearms found in Blenman's garage. In the plea agreement, Bish acknowledged that "in the location from which [he] was distributing methamphetamine from, 4756 Stanhope Kellogsville Road, Kingsville Township, [he] was in possession of multiple firearms." DE 37, Plea Agreement, Page ID 102. 4756 Stanhope Kellogsville Road was Blenman's residence.

Bish argues that this court should disregard the statement in his plea agreement because the plea agreement also states that the "parties have no agreement regarding the two-level enhancement for the possession of multiple firearms at the location from which the defendant was distributing methamphetamine as part of the conspiracy." DE 37, Plea Agreement, Page ID 99. Bish appears to characterize the inclusion of the factual statement that Bish possessed firearms at Blenman's property as "poor drafting by attorneys." CA6 R.33, Reply Br., at 5. Bish claims, without citing case law, that this alleged poor drafting should not be held against him. Bish also claims that he "was tricked into signing the Plea Agreement" and that the government is seeking "to avoid its bargain." *Id.* at 6. Bish does not argue, however, that he entered into the plea agreement involuntarily. Furthermore, the government read the entirety of the factual basis section of the plea agreement, including the section that Bish now disputes, during the plea hearing. When asked whether he admitted that he engaged in the stated conduct, Bish responded that he did. Defense counsel also did not object to the factual findings during the plea hearing. Simply put, Bish's arguments for why this court should not consider the plea agreement are misguided.

When considering Bish's statement in the plea agreement that he possessed firearms at Blenman's property alongside the evidence the government presented at the sentencing hearing, the district court's conclusion—that Bish was discussing the firearms in Blenman's garage during his December 12 phone call with Brandy—was not clearly erroneous. The guns were found "in a big bag" in the back of a garage at a property where Bish admitted to possessing firearms. DE 85-4, Sentencing Ex., Page ID 723; DE 72, Sentencing Hr'g Tr., at Page ID 500–02. Furthermore, Bish demonstrated that he had the power and intention to exercise control over the firearms when he told Brandy to move them to a different location to store them somewhere safer and then Brandy agreed to move them. *See Houston*, 813 F.3d at 295 ("Constructive possession occurs when a person has the power and intention to exercise dominion and control over an object."). In conclusion, district court did not clearly err by finding that Bish had constructive possession.

Second, the district court did not clearly err by finding that Bish possessed the firearms found in Blenman's garage during the commission of the offense or relevant conduct. The charged conspiracy in this case existed from December 1, 2018 until at least March 27, 2019. During that time, Brandy conducted drug transactions from Blenman's garage under Bish's instruction. Additionally, Bish himself admitted that he distributed methamphetamine from Blenman's property before he was arrested. When the officers searched Blenman's garage, they found the firearms near drugs, ammunition, and a digital scale. *See Moses*, 289 F.3d at 851 (finding that the defendant failed to meet his burden where he failed to prove that a pistol stored in his bedroom closet did not have proximity to the drug activity). Several of the firearms were also models that are frequently used in drug trafficking, such as .22 caliber revolvers. *See id*. Thus, the district court did not clearly err by finding that Bish possessed the firearms during the commission of the

conspiracy. Accordingly, the government proved by the preponderance of the evidence that the firearm sentencing enhancement should apply.

Because the district court did not clearly err in finding that the government met its burden, the burden shifted to Bish to demonstrate that it was clearly improbable that the firearms recovered from Blenman's garage were involved in the conspiracy to distribute methamphetamine. *See Moses*, 289 F.3d at 850. Bish failed to meet this burden. Bish's counsel at the sentencing hearing did not present any evidence; she only cross-examined the government's witness. *See Greeno*, 679 F.3d at 516 (finding that the defendant did not meet his burden when he failed to present any evidence).

## IV.

The district court's application of the two-level firearm enhancement to Bish's base offense level was not clearly erroneous. The judgment of the district court is affirmed.