NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0176n.06

No. 20-5554

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
Apr 07, 2021
DEBORAH S. HUNT, Clerk

|                                    |   |                                  |
|------------------------------------|---|----------------------------------|
| UNITED STATES OF AMERICA,          | ) |                                  |
|                                    | ) |                                  |
|    Plaintiff-Appellee, | ) |                                  |
|                                    | ) | ON APPEAL FROM THE UNITED        |
| v.                                 | ) | STATES DISTRICT COURT FOR        |
|                                    | ) | THE EASTERN DISTRICT OF          |
| LUCIEN LANIER,                     | ) | KENTUCKY                         |
|                                    | ) |                                  |
|    Defendant-Appellant. | ) | OPINION                          |
|                                    | ) |                                  |

Before: SUHRHEINRICH, SILER, and SUTTON, Circuit Judges.

SILER, Circuit Judge. Lucien Lanier appeals his sentence, arguing that the district court clearly erred in finding that he possessed certain drug quantities and two firearms. We affirm.

Lanier pleaded guilty to conspiring to distribute and possess with intent to distribute controlled substances, which included 100 grams or more of a mixture or substance containing heroin and 40 grams or more of a mixture or substance containing fentanyl. The district court sentenced Lanier to 137 months' imprisonment. Lanier argues that the district court should not have characterized certain additional amounts of heroin and fentanyl and two firearms found at the place of his arrest as being in his constructive possession.

Between May and June of 2018, Lanier provided Dante Martin with drugs that included heroin and fentanyl. Lanier used an intermediary to deliver those drugs to Martin. Martin, in turn, sold those drugs to a confidential informant in four controlled buys occurring on May 23, June 4, June 13, and June 27. Upon his arrest after the last controlled buy, Martin told police that Lanier was the source of his drugs and gave police Lanier's cell phone number.

Police obtained a tracking warrant on June 27, then tracked Lanier to a stash house in Cincinnati the next day. After knocking on one of the doors to the house and calling out his name for about a minute, officers observed Lanier exit the house through a different door, make "some type of eye contact or some type of contact" with some of the officers, and reenter the house. One officer testified that "[a]t that moment, you c[ould] hear a bunch of shuffling inside the house, whether it's furniture or appliances, whatever it was, but you c[ould] hear a lot of commotion going [on] inside . . . . You could hear it from the outside, and I was in the front of the house." Officers then knocked on one of the doors of the house for about "10 or 15 minutes" before Lanier surrendered.

Upon entering the home to conduct a protective sweep, police found no other occupant. In the kitchen, in plain view, were drugs and drug-making materials, including scales with heroin and fentanyl residue, a blender, and packaging materials. Officers also found the drugs and guns at issue here: (1) 2.474 grams of a heroin/fentanyl mixture inside a kitchen cabinet; (2) two handguns on top of that same kitchen cabinet; and (3) 119.143 grams of a heroin/fentanyl mixture in the attic.[1] One officer believed a bag of drugs containing a heroin/fentanyl mixture found in the attic right next to the attic door to have been recently placed there because, in his view, a door leading to the attic had been recently opened and the bag was clean compared to the accumulated filth otherwise found in the attic.

Also in the kitchen, officers found $4,100 behind the stove, firearm ammunition, and a holster and a magazine that the officer believed fit one of the firearms found in the attic. Officers additionally found two cell phones in the living room by a couch along with other personal items,

---

[1] Officers found two additional handguns in the attic and cocaine throughout the house, but the district court found that the government did not prove Lanier's constructive possession over these items.

including a drink, lighter, ashtray, cigarettes, cigars, marijuana, and a pair of slippers. Of the two bedrooms in the house, one was empty but the other had a mattress in it and clothes in that bedroom's closet. In the laundry room, officers observed a crate for some kind of animal and some clothing. Counsel for Lanier stated that Lanier was "occupying" the house "but had only been there shortly" and that Lanier "was in the house on the couch." The district court noted: "It is undisputed that Defendant Lanier was neither the owner nor lessee of [the stash house]. It is also undisputed that no mail bearing his name was found at that location. Finally, there was no evidence elicited . . . about how long Lanier had been staying at that location prior to his arrest on June 28, 2018."

Nonetheless, the district court found Lanier to be in constructive possession of the aforementioned drugs and guns so as to apply a base offense level increase under USSG § 2D1.1(c) and enhancement under USSG § 2D1.1(b)(1). The district court's finding that Lanier constructively possessed the guns and drugs is reviewed for clear error. *See United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) (drugs); *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (firearms).

The concept of constructive possession was outlined in *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009):

> "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." "Proof that 'the person has dominion over the premises where the [object] is located' is sufficient to establish constructive possession." However, "[p]resence alone cannot show the requisite knowledge, power, or intention to exercise control over the [object]."
>
> . . .
>
> "To find constructive possession, . . . more evidence than mere physical proximity of the defendant to the [contraband] is required. It is necessary that some nexus

between the accused and the [contraband] be established." "[M]ere presence in the area where the [contraband] is discovered or mere association with . . . the property where it is located[] is insufficient to support a finding of possession."

*Id*. at 944–45, n.3 (citations and emphasis omitted). "However, other incriminating evidence, coupled with presence, . . . will serve to tip the scale in favor of sufficiency." *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976) (citations omitted). "Our . . . decisions show that the quantum of evidence necessary to overcome *Bailey* is minimal in . . . the . . . constructive possession context[]." *United States v. Walker*, 734 F.3d 451, 456 (6th Cir. 2013).

Our decision in *United States v. Catching*, 786 F. App'x 535, 537 (6th Cir. 2019), is Lanier's primary authority. In *Catching*, this court found that the district court clearly erred in determining that the defendant constructively possessed marijuana found in a car the defendant was driving: "Without any nexus between [the defendant] and the marijuana other than the fact that he was driving the rental car where the marijuana was found, the government's contention that [the defendant] possessed the drugs amounts to 'mere argument, not evidence.'" *Id*. at 543 (citation omitted) (emphasis in original).

Some similarities exist between the case at hand and *Catching*. As in *Catching*: (1) no drugs or guns were found on Lanier's person; (2) the owner/renter of the stash house where the drugs and guns were found was never identified; and (3) no physical evidence links Lanier to the drugs and guns found, as no fingerprints were taken. *See id*. at 537–38.

But key differences also exist between *Catching* and the case at hand. Unlike in *Catching*: (1) Lanier was found at the stash house by himself; and (2) there is no issue of conflicting third-party statements of ownership over the drugs or guns. *See id*. at 537–39. Additionally, the only other individual even suggested to have a connection to the stash house is the unidentified intermediary Lanier used to physically hand over the drugs to Martin, but no presence on the part

of the intermediary at the stash house has been shown here, much less a presence akin to the woman's in-person presence in the car with the defendant in *Catching*. *See id*.

Most importantly though, unlike the defendant's absent connection to the marijuana at issue in *Catching*, the district court here correctly identified a clear nexus between Lanier and the heroin and fentanyl found at the stash house: Lanier sold those same kinds of drugs to Martin the day before those drugs were found, some in plain view, at the place of Lanier's arrest where no one else was present and no specific person has ever been identified as having similar access. *See United States v. Cobbs*, 233 F. App'x 524, 534 (6th Cir. 2007) ("While mere proximity to the drugs is not sufficient, proximity combined with other evidence of the defendant's involvement in a conspiracy to distribute [drugs] will suffice to establish [constructive] possession." (citation omitted)). Although the quantities of heroin and fentanyl the government seeks to attribute to Lanier were somewhat hidden away, it is reasonable to assume that the 10 to 15 minutes it took Lanier to surrender to officers, during which at least one officer heard "a lot of commotion going [on] inside[,]" was spent attempting to hide his heroin and fentanyl mixtures in the kitchen cabinet and attic. *Cf. Walker*, 734 F.3d at 456 ("The defendant's proximity to the [contraband], combined with the 'furtive movements' the police observed, were sufficient to support [a possession] conviction [in *United States v. Montague*, 438 F. App'x 478 (6th Cir. 2011)].").

As for the firearm enhancement, it appears that Lanier admitted, at his pre-sentencing hearing, that the same reasons that would support a finding that he constructively possessed the heroin and fentanyl quantities at issue in this case also support a finding that Lanier constructively possessed the two firearms. Although Lanier's association with a firearm here does not really have the same controlled-buys-of-heroin-and-fentanyl nexus supporting the drug quantities finding, the handguns at issue here, at least one of which was loaded and in a holster, were found on top of the same kitchen cabinet where heroin and fentanyl were discovered and in the same room where

drug-making materials containing heroin and fentanyl residue were seen in plain view. The aforementioned facts associating Lanier with supplying heroin and fentanyl, coupled with the commotion occurring within the house before Lanier's arrest, support the finding that Lanier constructively possessed the heroin and fentanyl found in that same kitchen cabinet. Thus, we are, once again, left with the definite and firm conviction that the district court made no mistake in finding by a preponderance of the evidence that Lanier constructively possessed the firearms at issue here. *See United States v. Greeno*, 679 F.3d 604, 606 (6th Cir. 2012).

Lanier makes little to no attempt to grapple with the question of whether the two firearms are connected to his offense. *See United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) ("Once the government establishes by a preponderance of the evidence that the defendant . . . constructively 'possessed' the weapon, . . . the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense.") (citation and quotation marks omitted) (cleaned up); *see also United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016) ("In examining the probability of a connection, the court weighs a number of factors, including: (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession." (citation omitted)). As Lanier has admitted to providing Martin with the same kinds of drugs found near the two firearms, it cannot be said that the firearms lack a connection to his offense here. *See United States v. Thornton*, 822 F. App'x 397, 407 (6th Cir. 2020) ("The district court did not clearly err in determining that the handgun found alongside several pills and in close proximity to heroin, carfentanyl, manufacturing materials, and paraphernalia, was used during the commission of the

offense.  Likewise, it was not 'clearly improbable that the weapon was connected with the offense.'"); *United States v. Mayberry*, 540 F.3d 506, 514 (6th Cir. 2008).

In sum, for sentencing purposes, the government met its burden of proving Lanier's constructive possession of the drugs and firearms at issue in this case.  *See Walker*, 734 F.3d at 456 ("Our . . . decisions show that the quantum of evidence necessary to overcome *Bailey* is minimal in . . . the . . . constructive possession context[].").

**AFFIRMED.**