NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0475n.06

Case No. 23-6054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 02, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
|  | ) | EASTERN DISTRICT OF KENTUCKY |
| KAITLYN ALLEN, | ) | |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Appellant Kaitlyn Allen pled guilty to conspiracy to distribute methamphetamine. Prior to her guilty plea, Allen had moved to exclude evidence of weapons and drugs found in her home, arguing that the search warrant executed on her residence did not establish probable cause, but the district court denied the motion. The plea agreement preserved her right to appeal the suppression motion.

At her sentencing hearing, Allen objected to the district court's decisions to implement a two-point increase for possession of a dangerous firearm and to reject a sentencing decrease under the "safety valve" provision of 18 U.S.C. § 3553(f). We now **AFFIRM** the district court's denial of her motion to suppress and its ultimate sentencing determination.

**I.**

In September 2022, Allen was indicted for conspiring to distribute 500 grams or more of a substance containing methamphetamine. The crucial evidence supporting this indictment was obtained through an August 25, 2022, search of Allen's residence pursuant to a search warrant.

The supporting affidavit for the search warrant outlined a long investigation by federal authorities into Allen's participation in a drug trafficking conspiracy with co-defendant Billy Letner, which spanned from January 2022 to August 2022. Beginning in January 2022, law enforcement began investigating Letner who had been identified by sources as a large-scale methamphetamine trafficker. A source told law enforcement that Letner was buying crystal methamphetamine from a white female residing in Lexington, Kentucky. Based on cellular analysis, other sources of information, and surveillance, law enforcement believed this individual to be Allen. Thus, agents began surveilling the activities of Allen in relation to Letner.

Four instances outlined in the affidavit are worth noting. First, in July 2022, a confidential source contacted law enforcement to tell them that Letner was intending to meet his source of drugs in the parking lot of a Taco Tico restaurant near Allen's residence. Surveillance footage at a nearby Walgreens showed Allen's vehicle enter the Taco Tico lot and drive towards Letner's vehicle. The two vehicles left the parking lot within a few minutes of each other. The confidential source later told law enforcement that Letner had bought five pounds of crystal methamphetamine from Allen.

Second, in August 2022, the confidential source informed law enforcement that Letner planned to meet his source again. Law enforcement observed Allen exit her residence with a tan handbag and get in her vehicle. Allen then parked her vehicle next to Letner at an apartment complex. Letner was then observed sitting inside Allen's vehicle and exiting her vehicle with the same tan handbag Allen had been seen with earlier. The confidential source informed law enforcement that a day later he had observed nine pounds of crystal methamphetamine and an unknown quantity of heroin and "molly" in Letner's residence.

Third, a few days after the second incident, law enforcement observed Allen and Letner enter the Taco Tico parking lot around the same time and leave the parking lot together. Fourth, about a week after the third incident, officers observed Allen leaving her residence carrying a brown shopping style bag. Allen then drove to Target and parked near Letner's vehicle, which was already present. Letner entered Allen's vehicle and then exited carrying the same brown bag. Sheriffs later conducted a traffic stop of Letner's vehicle and found Allen's brown bag as well as one pound of suspected methamphetamine and two pounds of suspected heroin or fentanyl.

Based on this information, the government concluded that Allen utilized her residence for "storing and distributing illegal drugs and drug proceeds on behalf of a significant drug trafficking organization." The magistrate authorized the requested search warrant. During the search, law enforcement discovered individual wrapped baggies containing methamphetamine and other drugs. Law enforcement also found a 9-millimeter loaded semi-automatic handgun in Allen's dresser, next to the drugs. Nearby were two more handguns in a bedroom closet and a small purse in a baby bassinet with $4,300 in United States currency. After the officers recovered the drugs, weapons, and money from Allen's residence, Allen was indicted for conspiracy to distribute methamphetamine.

Allen moved to the suppress the evidence seized during the August 25 search, arguing that the search warrant was not supported by probable cause and lacked a nexus between the apartment and evidence sought. Adopting the magistrate judge's recommendation, the district court denied Allen's motion to suppress, finding that the affidavit established probable cause and, even if it did not, the good-faith exception applied. Allen then pled guilty, reserving her right to appeal the district court's denial of her motion to suppress.

At Allen's sentencing, the district court determined that the sentencing guidelines range was between 168 and 210 months. In calculating the guidelines range, the district court applied a two-point sentencing enhancement because Allen possessed a dangerous firearm in the commission of her crime. *See* U.S.S.G. § 2D1.1(b)(1). Allen objected to the firearm enhancement, but the district court overruled her objection, noting that the presence of the loaded gun next to the drugs showed that Allen possessed the firearm during the commission of her drug conspiracy. The district court also rejected Allen's argument that she was eligible for a safety valve reduction to her sentence. The district court noted that Allen possessed a firearm in connection with the offense and was not completely forthcoming with the government. *See* 18 U.S.C. § 3553(f)(2), (5). But ultimately the district court sentenced Allen to a below the guidelines sentence of 144 months in prison. Allen timely appealed, challenging the district court's denial of her motion to suppress and its sentencing determination.

**II.**

"In appeals from a district court's ruling on a motion to suppress evidence, we review the trial court's factual findings for clear error and its legal conclusions de novo." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Ultimately, the court must accord the magistrate's initial determination of probable cause "great deference." *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016) (citation omitted).

A district court's determination of the sentencing guidelines is reviewed de novo. *United States v. Pryor*, 842 F.3d 441, 452 (6th Cir. 2016). But the district court's factual findings made in the sentencing determination, including whether the "defendant possessed a firearm during a drug crime," are reviewed for clear error. *United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010) (citation omitted).

**III.**

Allen argues that the affidavit attached to the search warrant failed to demonstrate probable cause, the district court inappropriately applied a sentencing enhancement for possession of a firearm, and the district court was incorrect when it declined to apply a safety valve reduction to Allen's sentence. We reject Allen's arguments. First, the evidence outlined in the affidavit established sufficient probable cause to show a nexus between Allen's drug trafficking and her use of her residence to store drugs. Second, because the government provided evidence that Allen constructively possessed a firearm during the commission of her conspiracy the district court's decision to apply the sentencing enhancement was proper. Third, because Allen possessed a firearm during the commission of her conspiracy, she did not qualify for a safety valve reduction.

**A.**

Under the Fourth Amendment of the United States Constitution, a search warrant shall only issue upon "probable cause." U.S. Const. amend. IV; *see Groh v. Ramirez*, 540 U.S. 551, 557 (2004) ("The Fourth Amendment states unambiguously that no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (cleaned up)). "Probable cause for a search warrant exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009) (citation omitted). In establishing this probability, a search warrant affidavit must contain "adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). To search a specific residence, the affidavit must show a "nexus between the place to be searched and the evidence sought." *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) (citation omitted).

The affidavit here established a nexus between Allen's drug dealing activities and her residence. *See Helton*, 35 F.4th at 518. The fact that Allen went to and from her residence carrying bags that she later gave to Letner and that drugs were later found in his car suggests that evidence of drugs could be found in her home. *United States v. Sanders*, 106 F.4th 455, 462 (6th Cir. 2024) (en banc) ("Other times, circumstantial evidence will do the trick. That is so where, for instance, officers, after observing a person leave a location, soon find the individual possessing contraband, possibly even engaging in a sale involving the contraband, suggesting that the illicit materials came from the location.").

But even if the close relationship between Allen's home and the drug dealing activity was not specific and direct evidence that drugs would be in the home, circumstantial evidence can suffice. As recently noted by this court, sitting en banc, when an affidavit establishes both where the defendant lives and the defendant's active engagement in a criminal activity, an officer may allege, based on his experience,[1] that it is likely that the "criminal suspect keeps the instrumentalities and fruits of his crime in his residence," and that allegation may be sufficient, in context, to create probable cause. *Sanders*, 106 F.4th at 462 (citations omitted); *see, e.g.*, *United States v. Reed*, 993 F.3d 441, 448 (6th Cir. 2021) ("Even if no specific evidence ties drug dealing to a home, we have also called it 'well established' that a nexus to search the home can exist if a suspect's drug dealing is 'ongoing' at the time the police seek the warrant." (citation omitted)); *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) ("[W]e have held that an issuing judge may infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking."); *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) (noting that the Sixth

---

[1] The officer in this case notes in his affidavit that he has been employed by the Drug Enforcement Administration for thirteen and a half years. This is sufficient to show his experience without a specific affirmation that he has relied on it in his conclusion in the affidavit.

Circuit has "upheld a warrant authorizing a search of a residence despite only a limited connection between the residence and drug related activity").[2]

Further, even if the affidavit in the search warrant lacked probable cause, under *United States v. Leon*, the evidence would not be subject to the exclusionary rule because it was "seized in reasonable, good-faith reliance on [the] search warrant[.]" 468 U.S. 897, 904 (1984). "Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citation omitted). The affidavit lacks the requisite indicia of probable cause such that a belief in the existence of probable cause would be objectively unreasonable if it is a "bare-bones" affidavit. *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). The inquiry into whether an affidavit is bare bones, precluding application of the good-faith exception, "requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis [for] knowledge [] that go beyond bare conclusions and suppositions." *Id.*

As discussed, the affidavit in this case is detailed and specific and establishes Allen's drug dealing and her comings and goings from her residence while carrying drugs. Such evidence is not so objectively unreasonable as to be considered a bare-bones affidavit. Our circuit has applied the good-faith exception in cases with a far more tenuous nexus between the residence and drug activity. *See United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (collecting exemplars of the minimal bar for the good-faith exception); *see also United States v. McCoy*, 905 F.3d 409,

---

[2] However, as this court noted in *Reed*, there is a fine but significant line between the permissible inference, founded in the allegations of an experienced officer, that someone engaged in drug dealing on an ongoing basis may be storing drugs in her home, and an inference that "the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Reed*, 993 F.3d at 448. The former is permissible; the latter is not. *Id.*

417 (6th Cir. 2018) ("[A] link between the drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the warrant.").

Because the affidavit supplied probable cause for the search and, in any event, the good-faith exception applies, the district court did not err in denying Allen's motion to suppress.

**B.**

The Sentencing Guidelines provide for a two-point increase "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the crime. U.S.S.G. § 2D1.1(b)(1). "Once the government establishes by a preponderance of the evidence that '(1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense,' the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *United States. v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (citation omitted). In determining whether a defendant met his burden under the clearly improbable standard, we consider several factors:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir. 2023) (citation omitted). If the defendant fails to meet his burden, the district court applies the sentencing enhancement. *Catalan*, 499 F.3d 604, 607–08.

Allen had clear constructive possession of the firearm as it was in a drawer in her residence. *See United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009) ("Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the

intention at a given time to exercise dominion and control over an object either directly or through others. Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." (cleaned up)). It does not matter that there is no evidence that Allen was actually using the gun while conspiring to deal drugs. The government need not establish such a direct connection between the firearm and the drug dealing; it need only show that the defendant possessed the gun during the relevant conduct (i.e., the drug conspiracy). *United States v. West*, 962 F.3d 183, 188 (6th Cir. 2020); *see also* U.S.S.G. § 1B1.3(a)(1)(B) (describing relevant conduct as conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense"). Thus, in cases much like this one, where weapons were found near drugs, and the defendant was charged in a drug conspiracy, we have held that the government met its initial burden where no evidence suggested the guns were actually used in the commission of drug sales. *See, e.g.*, *United States v. Bucio-Cabrales*, 635 F. App'x 324, 338 (6th Cir. 2016).

It is entirely plausible, as Allen argues, that she bought the guns for safety reasons. Nonetheless, the fact remains that, perhaps in tandem with concerns for safety, Allen possessed a firearm while also conspiring to deal drugs. *See United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996) (affirming application of firearm enhancement because, even if the gun was possessed by someone else in the house for their protection, it still "located in a residence to which [defendant] had full access and where drugs were found"). The government therefore met its initial burden.

Allen, now having the burden upon her shoulders, fails to demonstrate that it is clearly improbable that the weapon was connected to the offense. If anything, the factors outlined above point heavily in the direction that the loaded handgun was possessed during the commission of Allen's offense. Allen does not dispute the facts or provide any evidence that the drugs found next

to the firearm were not, or could not, have been used in the drug conspiracy. At best, she presents an argument for another reason she may have needed the guns in addition to drug trafficking.

To conclude, the government met its burden to prove by a preponderance of the evidence that Allen possessed a weapon during relevant conduct to her conviction and Allen failed to present evidence that it would be clearly improbable that the firearms would be connected to the offense. The application of the enhancement was appropriate.

**C.**

Under the safety valve provision of the Sentencing Guidelines, a district court may disregard a mandatory minimum sentence "if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)–(5)[.]" U.S.S.G. § 5C1.2(a). The "defendant bears the burden of proving by a preponderance of the evidence that he is entitled to relief under the safety valve." *United States v. Barron*, 940 F.3d 903, 914 (6th Cir. 2019).

Allen possessed a weapon during the commission of her drug conspiracy, so she cannot show that she "did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]"[3] 18 U.S.C. § 3553(f)(2). Not only does Allen present no evidence that she did not possess a weapon during the drug conspiracy, there is ample evidence, particularly the fact that the firearm was found near the drugs, to indicate that she *did* possess the firearm during the offense. *See United States v. Mackey*, 265 F.3d 457, 462–63 (6th Cir. 2001) (noting that finding a loaded gun, easily accessible and near drug paraphernalia, is

---

[3] It is important to note that a district court's application of the sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) does not make Allen necessarily ineligible for the safety valve reduction. *See United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004) (noting the possibility that a defendant can satisfy the preponderance of the evidence standard under the safety valve provision but fail to make the "clearly improbable" showing to avoid the sentencing enhancement). But that is not the case here. As explained in this opinion, Allen has failed to satisfy both the preponderance of the evidence standard with respect to the safety valve provision *and* the "clearly improbable" showing with respect to the sentencing enhancement.

evidence that the gun is intended "to provide defense or deterrence in furtherance of [] drug trafficking"). Thus, the district court did not err in declining to apply the safety valve provision.

## IV.

For the reasons discussed, we affirm the district court's denial of Allen's motion to suppress and its ultimate sentencing determination.